## WASHER *v.* BULLITT COUNTY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KENTUCKY.

Argued February 1st, 1884.—Decided March 3d, 1884.

When an amended complaint demands a sum different from that demanded in the original, the amended and not the original complaint is to be looked to in determining the question of jurisdiction.

At common law a county may be required or have authority to maintain a bridge or causeway across its boundary line and extending into the territory of an adjoining county.

A statute of Kentucky which enacts that "County Courts have jurisdiction to . . . erect and keep in repair necessary . . . bridges and other structures and superintend the same, . . . provide for the good condition of the public highways of the county ; and to execute all of its orders consistent with law and within its jurisdiction" confers upon a County Court authority to erect a bridge across a boundary stream and construct approaches to it in the adjoining county.

The power conferred upon County Courts of adjoining counties by statute, to construct bridges across boundary streams at joint expense is not exclusive, and does not take away the common-law right in each of the counties to erect such bridges at its sole cost.

This was an action at law brought by the plaintiffs in error against the county of Bullitt, in the State of Kentucky, on a contract dated July 8th, 1878, made between the plaintiff Washer and the defendant county, for the construction of a bridge by Washer over Pond Creek, the boundary between Bullitt and Jefferson Counties.

The contract, which is attached as an exhibit to the petition, was executed by Washer and J. W. Ridgway, commissioner of Bullitt County. It provided that Washer should erect an arched stone bridge with earthen embankments across Pond Creek, at the Branner foundation site, according to certain specifications, for specified prices per cubic yard of masonry and embankment. Bullitt County guaranteed payment for the whole work.

The petition alleged that on August 29th, 1878, Washer transferred by his indorsement in writing the contract made by him with the county of Bullitt, and all moneys due to him thereon, to his co-plaintiffs, Danenhauer and Baecker. It averred that on December 10th, 1878, there was due to the plaintiffs from Bullitt County on the contract the sum of $5,325.14, which it refused to pay, or any part thereof, "except the sum of $1,800, leaving a balance due thereon of $3,525.14," from which latter amount was to be deducted the sum of $340.75, which the plaintiffs had agreed might be paid by the defendant directly to the Smith Bridge Company for materials furnished by it for the bridge, leaving a balance due the plaintiffs of $3,184.39.

The defendant filed a general demurrer to the petition, which the court sustained, with leave to the plaintiffs to amend. They afterwards filed an amended petition, in which it was averred that before the contract mentioned in the petition was made the owners and occupants in possession of the lands approaching the bridge on both sides of Pond Creek appeared in open County Court, and relinquished of record the right of way to and across the bridge; and thereafter, and before the contract was made, the County Court of Bullitt County, being composed of the presiding judge and a majority of the justices thereof, appointed commissioners and notified the Jefferson

County Court thereof, and requested it to appoint like commissioners to contract for the bridge, which the Jefferson County Court did; and the commissioners so appointed met at the place proposed for erecting the bridge, and at the place mentioned in the contract, but could not and did not agree upon a plan for erecting the bridge, nor contract for the erection thereof; that thereupon the County Court of Bullitt County, composed of the county judge and a majority of the justices of the county, decided that it was necessary to erect the bridge, and having exhausted all means provided by statute for securing the aid of Jefferson County in building the same, decided to erect the bridge; and that, on July 16th, 1877, said County Court, composed as aforesaid, authorized J. W. Ridgway to report plans and specifications for the erection of the bridge, and W. Carpenter, the county judge, to receive and accept bids for the same; and that, in pursuance of this authority, the county judge accepted the bid of Washer; and that Ridgway, being thereunto authorized by an order of the County Court, entered into the contract with Washer appended to the petition, and that the making of the contract was subsequently ratified by orders made and entered of record by the County Court of Bullitt County, composed of the county judge and a majority of the justices of the county, directing the levy of taxes to pay for the work done under the contract, and the application of the money so raised to that purpose.

The amended petition also averred that "the bridge was necessary for the public use of the people and travel of Bullitt County, and that said proceedings and orders and the contract so entered into by defendant were valid and binding upon it."

By the amended petition the allegations of the original petition in respect to the payment of $1,800 for the work done under the contract, and in respect to the sum of $340.75 due the Smith Bridge Company for materials for the bridge, and the averment that there was a balance due upon work performed by the plaintiff Washer of $3,184.39, were withdrawn; and the amended petition averred that the defendant had failed to perform its contract or to pay plaintiffs for work done there-

under, to their damage in the sum of $5,325.14, for which amount they demanded judgment.

To this amended petition the defendant demurred on the ground that it did not state facts sufficient to constitute a cause of action.

The Circuit Court sustained the demurrer, and the plaintiffs electing to stand by their amended petition the court rendered judgment "that the plaintiffs take nothing by their petition, and that the defendant go hence without day and recover of the plaintiffs its costs," &c.

The plaintiffs sued out their writ of error.

*Mr. Augustus E. Willson (Mr. James Harlan* was with him) for plaintiffs in error.

*Mr. James Speed* for defendant in error.

Mr. Justice Woods delivered the opinion of the court.

The defendant in error contends that the appeal should be dismissed because the amount in controversy is less than $5,000, and therefore not sufficient to give this court jurisdiction. This contention is based on the averments of the original petition, which showed that the suit was brought to recover only $3,184.39, the balance due for work done under the contract sued on and for $500 damages.

In the amended petition all the averments of the original petition by which the amount in controversy was reduced below $5,000 were withdrawn, and it was averred that the sum of $5,325.14 was due to the plaintiffs for work done under the contract. It was as competent for the plaintiffs, when leave had been given them to amend their petition, to amend it in respect to the sum for which judgment was demanded as in any other matter. The admission in the original petition of the payment of $1,800 was specifically withdrawn in the amended petition, and after the withdrawal of that admission it nowhere appeared in the record that said sum was ever paid. The admission might have been made by the inadvertence or mistake of the plaintiffs or their counsel, but however made it was within their power to withdraw it without assigning reasons for the

withdrawal. They were not inexorably bound by the averments of the original petition. When a petition is amended by leave of the court the cause proceeds on the amended petition. It was upon the amended petition that the judgment of the court below was given, and the question brought here by this writ of error is the sufficiency of the amended petition. If its averments show that this court has jurisdiction, the jurisdiction will be maintained without regard to the original petition. It has been held by this court that after a case had been dismissed by it for want of jurisdiction, the pleadings being technically defective, the Circuit Court might allow an amendment so as to show the jurisdiction, and on a decree newly rendered the case might be again brought to this court. *Jackson* v. *Ashton*, 10 Pet. 480.

As the amended petition avers that there is due the plaintiffs a sum exceeding $5,000, we are of opinion that the jurisdiction of this court is plain upon the face of the record.

We now come to the merits of the case. The demurrer admits the execution of the contract by Ridgway, the county commissioner, under authority of an order of the County Court; its subsequent ratification by orders of the County Court, composed of the county judge and a majority of the justices of the county, directing the levy of taxes to pay for work done under the contract and directing the application of the money so raised to that purpose; and admits that there is due the plaintiffs the sum of $5,325.14 for the work so done. The County of Jefferson raises no objection to the building of the bridge. So far as appears it is quite willing that Bullitt County should erect the bridge, provided it does so at its own expense. The land owners at the Jefferson County end of the bridge, over and on whose premises a part of the bridge rests, make no objection. On the contrary, they have granted a right of way to Bullitt County over their lands to and across the bridge. The only controversy between the parties is whether Bullitt County had authority to make the contract sued on, by which it undertook at its own cost to build across a boundary stream a bridge, one end of which was within the territory of another county.

The statute law of Kentucky applicable to this question is as follows :

Section 1 of article 16, chapter 28 of the General Statutes of Kentucky, page 305, provides :

"County Courts have jurisdiction to lay and superintend the collection of the county levy, erect and keep in repair necessary public buildings, bridges, and other structures, and superintend the same ; regulate and control the fiscal affairs and property of the county ; . . . provide for the good condition of the public highways in the county ; and to execute all of its orders consistent with law and within its jurisdiction."

Sections 36 and 37 and 38 of art. 1, chap. 94, General Statutes, page 767, declare as follows:

" § 36. When the County Court of any county shall deem it advisable to erect a bridge or causeway over any place between that and an adjoining county, the court shall appoint a commissioner, and notify the court of the adjoining county thereof, and request the latter to appoint a like commissioner, and it shall be the duty of the court so requested to appoint such commissioner. The persons so appointed shall meet at the place so proposed for erecting the bridge or causeway, and agree on a plan for the same, and contract for the erection thereof ; and each of said county courts shall levy the costs of such work on its county, in proportion to the number of tithables in each county.

" § 37. When the County Court of one county shall think it expedient to build a bridge or causeway, and shall appoint a commissioner on its part as provided in the preceding section, and the court of the adjoining county shall refuse to appoint a commissioner, . . . the Circuit Court of the county refusing may issue a writ of mandamus to the County Court to show cause why an order shall not be entered up directing the appointment of the commissioner, and the erection of such bridge or causeway, &c.

" § 38. When the mandamus is returned, the Circuit Court shall hear and consider such evidence touching the matter as either party may adduce, and shall either dismiss the proceedings or award a peremptory mandamus, as may seem proper."

At common law a bridge was a common highway, and the county was bound to repair it. *Reg.* v. *Sainthill,* 2 Ld. Raym. 1174; 3 Salk. 76; *Rex* v. *W. R. of Yorkshire,* 2 East. 342. Under the statute of 22 Henry 8, which has been held to be merely declaratory of the common law, when part of a bridge happened to be in one shire and the other part in another, the respective shires were bound to repair within their respective limits. Woolrych on Ways, 200. But when a bridge which crossed a river dividing two counties was maintained by one of the counties under the statute of 23 H. 8, it was held that under the same statute it was compellable to repair the highway as a part of the bridge for a distance of three hundred feet from each end of the bridge, although one end was in another county. *Rex* v. *Inhabitants of Devon,* 14 East. 477.

It is therefore clear that at the common law a county might be required to maintain a bridge or causeway across its boundary line, and extending into the territory of an adjoining county. The same rule prevails in this country.

"A county is one of the territorial divisions of a State created for public political purposes connected with the administration of the State government, and being in its nature and objects a municipal organization the legislature may exercise control over the county agencies, and require such public duties and functions to be performed by them as fall within the general scope and objects of the municipal organization." *Commissioners of Talbot County* v. *Queen Anne's County,* 50 Maryland, 245.

It may even impose on one county the expense of an improvement by which it mainly is benefited, but in which the whole State is interested. *County of Mobile* v. *Kimball,* 102 U. S. 691.

"A county is created almost exclusively, with a view to the policy of the State at large, for purposes of political organization and civil administration in matters of finance, education, provision for the poor, military organization, and of means of travel and transportation," &c. *Hamilton County* v. *Mighels,* 7 Ohio St. 109.

In the case of *Agawam* v. *Hampden*, 130 Mass. 528, it was said by the court that,

"It is well settled that the legislature may enact that a particular road or bridge shall be a public highway, or may direct it to be laid out as such by county commissioners, and in either case may order the cost thereof, . . . as well as the cost of maintaining it or keeping it in repair, to be paid either by the commonwealth or by the counties, cities, or towns in which it lies, or which may be determined by commissioners appointed by the counties to be specially benefited thereby."

See also *Norwich* v. *County Commissioners*, 13 Pick. 60; *Attorney-General* v. *Cambridge*, 16 Gray, 247; *Scituate* v. *Weymouth*, 108 Mass. 128.

It is, therefore, not open to question that the legislature may, in its discretion, authorize or require one county to build, at its own expense, a bridge or road across the boundary line between it and another county.

When, therefore, the legislature of Kentucky authorized the County Court of any county to erect and keep in repair necessary public bridges, the act may well be construed to authorize the County Court of one county to build at its own expense a bridge, which it should adjudge to be necessary for the use of the people of the county, over a stream which formed the boundary line of the county. The power conferred upon the County Court by the statute of Kentucky to erect and keep in repair necessary public bridges, includes within its terms a bridge across the county boundary as well as one wholly within the county limits. Unless, therefore, there is other legislation which modifies the power thus conferred, the authority of Bullitt County to contract for the erection of the bridge in question is plain.

It is insisted by the defendant in error that sections 36 and 37 of article 1, chapter 94, above quoted, furnish an invariable rule, which must be followed before the County Court can make any contract for the erection of a bridge across the county boundary; that is to say, the bridge must be adjudged necessary to the people of both counties in proportion to their taxable

property; commissioners must be appointed for each county, and they must agree upon the plans and enter into a contract for the erection of the bridge; and that unless all these things concur there can be no bridge. We think such a construction of the statute is not tenable.

It may frequently happen that a bridge or causeway across the boundary line between two counties may be of vital necessity to one and of little use to the other. It may often happen that a county to be little or not at all benefited by a proposed bridge may successfully oppose before the Circuit Court the entering of an order directing the appointment of a commissioner in its behalf, or the erection of the bridge in part at its expense in proportion to its taxable property. To hold that the adjoining county could not under these circumstances build at its own expense a bridge necessary for the use of its inhabitants would be an unwarrantable construction of the statute.

In our opinion these proceedings are necessary only when the county desiring to erect a bridge over a stream dividing it from an adjoining county seeks to compel the adjoining county to bear its share of the expense. If its County Court adjudges that the bridge is necessary for the inhabitants of their county, but is of opinion that it is not of sufficient importance to the people of the adjoining county to justify the laying of a tax to aid in its erection, in proportion to the taxable property of such adjoining county, they may build the bridge at the expense of their own county. It is not necessary to go through the formalities prescribed by the statute to compel involuntary aid from the adjoining county, when it is clear that such aid ought not to be and cannot be exacted.

But according to the averments of the declaration the statute was pursued in this case as far as was possible. The County Court of Bullitt County appointed its commissioner and notified the fact to the County Court of Jefferson County, and requested it to appoint a like commissioner, which it did. The commissioners so appointed met at the place proposed for the erection of the bridge, but they could not and did not agree upon a plan, or make a contract for the construction of the bridge. Nothing further could be done under sections 36 and

37. Bullitt County therefore fell back upon the power conferred by section 1 of article 16, chapter 28, and made a contract by which it became responsible for the entire cost of the bridge. Its power to do this was, we think, clear.

We find nothing in the decisions of the Court of Appeals of Kentucky contrary to this view.

The case of *Nelson County* v. *Washington County*, 14 B. Mon. 92, is much relied on by the defendant in error. We have been able to see nothing in that case applicable to the controversy in this. The proceeding was one begun in the Circuit Court by Washington County, under section 7 of the act of 1797, which is similar to sections 36 and 37 of article 1, chapter 94, *supra*, to compel the justices of Nelson County to appoint commissioners to act with commissioners appointed by Washington County in fixing the manner and conditions of building a bridge across Chaplin River, the boundary between the two counties, and to show cause why they should not " lay a levy " to build such bridge. The Court of Appeals merely decided that Nelson County could not be compelled to levy a tax to build the bridge until commissioners had been appointed to decide upon its site and cost, and before it had united in the contract to build the bridge.

It is true the court said that " until a joint commission is constituted to act in obedience to the requisitions of the statutes, neither of the counties is bound, nor can either be compelled, to tax their citizens in any way to raise the money to build the bridge." That might be true when the proceeding was to compel the building of a bridge at the joint cost of the two counties; but this remark can have no application to this case, where one of the two counties has by her contract undertaken to pay the entire cost of the bridge under the general power conferred by section 1 of article 16, chapter 28.

In our opinion the County Court of Bullitt County had power to contract for the construction, at the cost of Bullitt County, of the bridge in question, having adjudged that it was necessary for the public use. It follows that the demurrer to the amended petition should have been overruled.

*The judgment of the Circuit Court sustaining the demurrer must be reversed, and the cause remanded for further proceedings in conformity with this opinion.*