**Joanne S. VALENTE**

v.

**MOORE BUSINESS FORMS, INC.**

**Civ. No. 81–364.**

United States District Court,
D. Vermont.

Oct. 4, 1984.

Joanne S. Valente, pro se.

Leonard F. Wing, Jr., Ryan, Smith & Carbine, Ltd., Rutland, Vt., and Laurence B. Oppenheimer, Cohen, Swados, Wright, Hanifin, Bradford & Brett, Buffalo, N.Y., for defendant.

## MEMORANDUM OF DECISION

HOLDEN, Senior District Judge.

### Introduction

By oral motion made in open court on July 30, 1984, the defendant in this employment discrimination action, Moore Business Forms, Inc. ("Moore"), moved for an order of dismissal or, in the alternative, for summary judgment. In support of its motion, defendant filed a memorandum of facts and law, together with extensive exhibits including four affidavits. This action by

the plaintiff, Joanne S. Valente, arises under Title VII of the Civil Rights Act of 1964 ("Title VII") charging employment discrimination. Counsel assigned to represent the plaintiff later withdrew with her consent and the court's approval. On July 30, 1984, the plaintiff, appearing in her own behalf, presented oral argument in opposition to the written and oral submission advanced by the defendant.

A brief statement of the uncontroverted facts and procedural background of the case is necessary to focus on the questions presented.

*Factual Background*

Plaintiff was hired by Moore on August 26, 1976 as a "Clerk III" assigned to the Personnel Department. She began work at Moore's Rutland, Vermont plant on September 13, 1976. Her duties included secretarial and clerical responsibilities in support of the defendant's personnel supervisors, then Ada E. Burg (referred to as "Greta" Burg) and her successor Robert Gaiko.

In addition to performing a wide range of clerical functions, plaintiff counselled employees about health and dental care plans, and processed Workman's Compensation claims. The plaintiff received favorable performance evaluations at this position. In performing her duties, plaintiff was provided an open section of the general office area of the Moore plant in Rutland, Vermont.

Plaintiff was required to undergo a physical examination upon her initial hiring by Moore. Her health history includes her statement that she had no "working disabilities." However, she did indicate that she had "allergic rhinitis", which is congestion of the mucous membrane of the nose. The ailment was not a disability as far as plaintiff's work was concerned. Plaintiff was aware of her affliction at the time of hiring and that she would be required to work in a factory area where dust was present. The complainant later reaffirmed that she suffered from no medical disability or physical handicap by her response to a Moore plant-wide survey taken in June 1980.

*Personnel Supervisor*

When the position of personnel supervisor was first established in the Rutland plant in 1976, it was staffed by a person who had an established work history with Moore including considerable experience in personnel-related functions. The position became available in early 1978. The vacancy was not posted for bidding at the time because Moore's posting and bidding procedures then in effect did not apply to a supervisory position at this level.

In proceeding to fill the position in 1978, the Moore plant manager made an initial selection of three leading candidates. One of this group was female. The selection of prime candidates was based upon:

an established successful work history with Moore, preferably in the Rutland plant; possession of a broad knowledge of plant operations, both administrative and production, preferably with personnel related and supervisory experience and a demonstrated ability to establish and maintain relationships with plant management.

Defendant's Answers to Plaintiff's Interrogatories, filed July 16, 1982, at 6.

Four additional employees, including plaintiff, also indicated an interest in the position. Plaintiff had been with Moore only one-and-one-half years when, in February or March 1978, she expressed her interest in being promoted to this position. Moore did not consider plaintiff to be qualified for the personnel supervisor position due to her limited knowledge and experience in the Rutland plant. The three prime candidates all had records of long service in Moore's Rutland plant.

The candidate ultimately selected to fill this position was Robert S. Gaiko. According to the Vermont Attorney General Office which originally investigated plaintiff's charge of employment discrimination, Mr. Gaiko was chosen because he had

a successful, lengthy work history in the Rutland plant (16 years); a good knowledge of all plant operations; and a dem-

onstrated ability to establish and maintain good working relationships with plant management.

Letter dated July 21, 1981 to Joanne Valente from the State of Vermont Office of Attorney General, at 2.

Mr. Gaiko had been employed in the Rutland plant since 1962. His initial experience included several production and maintenance positions. He later was promoted to Supervisor in the Press Area and to Supervisor of Plant Staff Services. In his sixteen years of service in the Rutland plant, Mr. Gaiko had developed a superior reputation. This, coupled with his knowledge of and experience with plant operations, rendered him fully qualified for the personnel supervisor position. Plaintiff was informed that she was not selected because she lacked production experience.

### Order and Pricing Clerk I

In August 1978, plaintiff made a formal application to be considered for a position of Order and Pricing Clerk I. Plaintiff was one of eighteen employees who applied. The position was filled by an employee who had five years longer experience with Moore than did plaintiff. Plaintiff did not raise her failure to gain this promotion as an issue in her administrative charge.

### Job Title Upgrade

On September 4, 1979, plaintiff became Personnel Secretary as a result of an upgrading of her job title.

### Purchasing Agent

In March 1980, plaintiff made a formal application to be considered for a position as Purchasing Agent. Plaintiff was one of twenty-two applicants, six of whom were female. She was selected for an interview, which resulted in a favorable appraisal. Plaintiff's ratings, based on her conduct during the interview, were as follows:

| | |
|---|---|
| Personality | - Self-Assured |
| Poise | - Confident |
| Disposition | - Amiable |
| Assurance | - Self-Confident |
| Volubility | - Wordy |
| Self-Expression | - Good |
| Tact | - Very Tactful |
| Aggressiveness | - Slightly Too Aggressive |
| Overall Evaluation of Conduct | Favorable |

One of the interviewers added:

Joanne lacked technical expertise and had somewhat limited service in relation to some other candidates. Her interview was impressive (she was among the top five candidates), but her limited Moore experience was outweighed by more experienced candidates.

Of the five finalists, two were female. The candidate selected had nearly ten years of service with Moore, including relevant experience in the Order Department. Plaintiff had no experience in this department and had less than four years of service with the company.

After March 1980, plaintiff continued in her position as Personnel Secretary and made no further applications for any other position with Moore. She performed her work in an open area in the office section of the plant, as she had since she began with Moore. In July 1980, plaintiff, at her own instance, was moved into a small office near the production area of the plant. In the following December, plaintiff complained to her supervisor, Mr. Gaiko, of a dust problem in her new office.

Immediately after having been advised of plaintiff's symptoms, Moore inspected the ventilation system and authorized certain alterations to ensure that the air flow to plaintiff's office did not come from the production area of the plant. Against this, the plaintiff asserts that during this time, Mr. Gaiko told her that hers was the only office that received air directly from the factory area of the plant. Letter dated May 5, 1981 from plaintiff to Robert Appel, Civil Rights Investigator, Vt. Attorney General's Office (plaintiff's exhibit 1 received during July 30, 1984 hearing).

Plaintiff concedes that after Moore made these changes to the air flow system, "things were better." After these changes, Mr. Gaiko approved plaintiff's request for overtime pay for an after-hours office cleaning on the evening of December 21, 1980. These combined efforts appar-

ently relieved plaintiff's problems; at least she made no further complaints during the ensuing four weeks.

On or about January 26, 1981, a steam humidifier became operational in the office areas of the plant. On January 28, plaintiff complained to Mr. Gaiko about the humidifier. He informed her that he would ask that the Maintenance Department inspect it. According to plaintiff, later that day, Gaiko told her that nothing could be done about the humidifier and that she would have to live with it. Defendant's response to the Attorney General's investigation indicates that Gaiko told plaintiff that the Maintenance Department was still attempting to work the bugs out of the humidification system.

On January 28, 1981, plaintiff voluntarily terminated her employment with defendant without prior notice.

*Procedural History*

On or about February 12, 1981, plaintiff filed a charge of employment discrimination ("administrative charge") against Moore with the Civil Rights Division of the Vermont Attorney General's Office. Plaintiff claimed that she had been discriminated against in that Moore refused to make reasonable accommodations for her "medically acknowledged allergy to dust" (physical handicap) while it made such accommodations for male employees. Plaintiff also claimed that her applications for two promotions, to personnel supervisor and to purchasing agent, were not given serious consideration.

Moore denied the charges and stated that: 1) it made reasonable efforts to alleviate the problems causing plaintiff's discomfort, 2) plaintiff's bid on the posted position of Purchasing Agent was given the same consideration as were all other applications received, and 3) plaintiff did not possess sufficient qualifications to be considered for personnel supervisor when she applied for the position.

By letter dated July 21, 1981, the Attorney General's Office notified plaintiff that its investigation revealed that the evidence did not support her complaint or a finding by that agency that Moore had unlawfully discriminated against her.

Plaintiff's charge was also filed with the Equal Employment Opportunity Commission ("EEOC"). By letter dated August 17, 1981, the EEOC's Deputy District Director notified plaintiff that there was not reasonable cause to believe that the charge was true. The letter further informed plaintiff that if she desired to pursue the matter further, she had ninety (90) days from the date she received the letter in which to file a private action in Federal District Court.

Plaintiff first contacted the court concerning her intention to sue on or about October 13, 1981. By letter dated October 15, 1981, the Clerk's Office informed Joanne Valente that she needed to file a complaint in order to bring an action in federal court.[1] By letter of November 24, 1981 to the clerk, plaintiff sought an extension beyond November 27, 1981 in which to file her complaint. In this letter, she indicated that she had been experiencing difficulty in securing counsel to assist her in drafting her federal court complaint.

On December 1, 1981, plaintiff filed combined motions to proceed *in forma pauperis* and appointment of legal counsel, along with a handwritten complaint. The complaint named three defendants: the EEOC, the State of Vermont Office of Attorney General, and Moore Business Forms, Inc. Plaintiff alleged that the administrative agencies named failed to conduct thorough investigations and ignored certain documentary evidence. Plaintiff charged that Moore violated fair employment practices and that employment discrimination was prevalent throughout Moore's Rutland plant.

On the issue of damages, plaintiff referred to mental anguish, drastically reduced income, and a "jeopardized" reputation. Plaintiff sought one million dollars in

---

**1.** The court finds that the federal court action commenced on October 13, 1981 despite the fact that the first entry on the docket was not made until November 24, 1981.

damages from each defendant and demanded trial by jury.

By order of the court filed December 30, 1981, the court granted plaintiff's motion to proceed *in forma pauperis* and appointed counsel pursuant to 42 U.S.C. § 2000e–5(f)(1). Mark Butterfield, Esq. accepted the *pro bono* appointment and filed a new complaint with the court on February 19, 1982. This complaint named Moore as the sole defendant. Jurisdiction was founded on Title VII of the Civil Rights Act of 1964. The second complaint, contained three counts, which may be summarized as follows:

> Count I: *Sex Discrimination.* This claim is brought under Title VII of the Civil Rights Act of 1964
>
> Count II: *Handicap Discrimination.* This claim is a pendent state law claim under 21 V.S.A. § 498
>
> Count III: *Breach of Conciliation Agreement.* Plaintiff alleges that Moore breached a conciliation agreement entered into between the EEOC, Moore, and certain Moore employees, not including plaintiff.

Plaintiff seeks injunctive relief, reinstatement, back pay and other financial compensation or restitution, and attorney's fees. No jury demand was made in the second complaint.

A summons was issued for the first time on February 19, 1982 and was returned to the court served on February 24, 1982. The court approved a stipulated enlargement of time for the defendant to appear and answer. Defendant's answer was filed April 13, 1982 and responded exclusively to the second complaint written by Attorney Butterfield.

Extensive discovery had been completed in March 1984 when the plaintiff informed the court that she was "seeking another attorney, possibly myself." Relations between plaintiff and assigned counsel had became strained to the point of irreconcilable differences which assigned counsel felt compelled his withdrawal from the case. Because plaintiff supported this motion and expressed her desire to proceed *pro se*, the court granted the motion to withdraw by order filed April 27, 1984.

*Discussion*

■ Disposition of defendant's motion to dismiss or for summary judgment is complicated at the outset by the appointment and subsequent withdrawal of the representation of assigned counsel. Plaintiff actively sought court-appointed representation and willingly accepted the services of Attorney Butterfield acting in her behalf. In this situation, the plaintiff is bound by the direction and actions which her court-appointed counsel took in proceeding to bring her employment discrimination claim to trial. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962).

■ The court had considerable discretion in its decision whether to appoint counsel for Joanne Valente. That decision is subject to review only for abuse of discretion. *Jenkins v. Chemical Bank,* 721 F.2d 876, 879 (2d Cir.1983). Upon consideration of the merits of Joanne Valente's complaint, the court named Mark Butterfield, Esq. as Joanne Valente's attorney and he accepted the appointment on a *pro bono* basis.[2] From the court's vantage point, Attorney Butterfield competently and diligently represented the plaintiff until withdrawal became the mutually desired solution to resolve irreconcilable differences over the handling of plaintiff's case. Plaintiff dismissed her court-appointed counsel after defendant's present motion was filed. It is unclear what involvement, if any, appointed counsel had in assisting plaintiff with her response to defendant's motion.

---

**2.** Title VII of the Civil Rights Act of 1964 does not provide the court with any funds to pay the court-appointed attorney, who must depend for compensation upon representing a "prevailing party" under 42 U.S.C. § 2000e–5(k). *See Brad-* *shaw v. U.S. District Court for the Southern District of California,* 742 F.2d 515–16 (9th Cir. 1984); Schlei & Grossman, *Employment Discrimination Law* at 947 n. 118 (2d ed. 1983).

Turning to the issues raised by plaintiff at oral argument, it is well established that an amended complaint ordinarily supersedes the original complaint. *Washer v. Bullitt County,* 110 U.S. 558, 562, 4 S.Ct. 249, 250, 28 L.Ed. 249 (1884); *International Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir.1977) (Oakes, J.), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978). Since defendant was never served with plaintiff's original complaint, the first complaint is without legal effect for purposes of naming the parties to the action. The second complaint named only Moore as a party defendant, and the action can proceed only against the defendant named in the amended complaint.[3]

The court now turns to the validity of the defendant's motion to dismiss or for summary judgment. The Federal Rules of Civil Procedure provide that

> [i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b).

The material submitted in support of the defendant's motion is properly before the court and will be considered in passing on the pending motion for summary disposition. Additionally, these supporting documents are properly presented on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, at 549–550 (1969); *Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130–1131 (2d Cir.1976) (Friendly, J.) (district court could consider

factual statements in plaintiff's affidavits on a 12(b)(1) motion).

A party moving for summary judgment has the burden of demonstrating the absence of genuine issues of material fact. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Project Release, et al. v. Prevost, et al.,* 722 F.2d 960, 968 (2d Cir.1983). Ambiguities and inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the summary judgment. *Adickes v. S.H. Kress & Co., supra,* 398 U.S. at 158–159, 90 S.Ct. at 1608–1609; *Project Release, et al. v. Prevost, et al., supra,* 722 F.2d at 968. For purposes of dismissal, the allegations in the complaint must be accepted as true. *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam); *Cameron v. Fogarty,* 705 F.2d 676, 678 (2d Cir.1983) (Oakes, J.).

Moreover, the court recognizes that plaintiff's complaint must be read with the generosity required in *pro se* civil rights actions. *Haines v. Kerner,* 404 U.S. 519, 520–521, 92 S.Ct. 594, 595–596, 30 L.Ed.2d 652 (1972) (per curiam); *Cameron v. Fogarty, supra,* 705 F.2d at 678; *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

### Dismissal of Count I

Title VII of the Civil Rights Act places primary responsibility for disposing of employment discrimination complaints with the EEOC in order to encourage informal conciliation of employment discrimination claims and to foster voluntary compliance with the statutes. *See Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 144 (2d Cir.1984) (stressing Congressional emphasis on administrative dispute resolution to minimize judicial burden under Title VII). In order to invoke the jurisdiction of the court, an aggrieved employee must ex-

---

**3.** Title VII proscribes discriminatory practices by an aggrieved employee's "employer", as defined in 42 U.S.C. § 2000e(b). *See* 42 U.S.C. § 2000e–2. The administrative agencies named could not be named as defendants pursuant to the jurisdiction of Title VII. *See generally,* Schlei & Grossman, *supra,* at 995–1005.

haust the available administrative remedies. 42 U.S.C. § 2000e–5. It is now well established that a prerequisite to the maintenance of Title VII claims in federal court is the timely filing of an administrative charge of unlawful discrimination with the EEOC. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 555 n. 4, 97 S.Ct. 1885, 1887 n. 4, 52 L.Ed.2d 571 (1977); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974).

■ These preliminary steps are essential components of Title VII's statutory scheme, which is designed to correct discrimination through administrative conciliation if possible, rather than by formal court action. While preliminary requirements for a Title VII action are to be interpreted in a nontechnical fashion, *Love v. Pullman Co.*, 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972), the aggrieved employee is not permitted to bypass the administrative process, *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3rd Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 *reh'g denied*, 430 U.S. 911, 97 S.Ct. 1187, 51 L.Ed.2d 589 (1977).

■ In the present case, the applicable time period under Title VII required that Joanne Valente file her EEOC charge within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e). Plaintiff's EEOC charge was dated February 12, 1981 and must be deemed to have been received by the EEOC on or about that time.

■ Since Vermont is a "deferral state" within the meaning of Title VII,[4] the EEOC was required to defer for 60 days to the state agency, designated as the Civil Rights Division of the Vermont Attorney General's Office. Thus, by operation of law, Joanne Valente's EEOC complaint is considered to have been filed on or about April 13, 1981. *Mohasco Corp. v. Silver*, 447 U.S. 807, 814 n. 16, 100 S.Ct. 2486, 2491 n. 16, 65 L.Ed.2d 532 (1980) (complainant in deferral state must file his charge within 240 days of the alleged discriminatory employment practice in order to insure that his federal rights will be preserved); *Lyda v. American Broadcasting Companies, Inc.*, 587 F.Supp. 670, 671 (S.D.N.Y.1984) (although plaintiff's charge was submitted to EEOC on October 20, 1981, it could not be deemed to have been filed with that agency until December 19, 1981); Schlei & Grossman, *Employment Discrimination Law* at 941, 986, 1038 (2d ed. 1983).

■ Accordingly, only the alleged unlawful employment practices which occurred within the 300 days preceding April 13, 1981 (or June 17, 1980 to April 13, 1981) could be presented in plaintiff's EEOC charge. Plaintiff's charge to the EEOC, however, complains of her failure to secure desired promotions in 1978 and in late March 1980. The subject of these charges occurred before the starting date of the applicable 300-day administrative filing period. Since these events took place before the opening date of her available proof, they are precluded from the court's consideration.[5] The fact that the EEOC processed the charge anyway and issued plaintiff a Notice of Right to Sue is not dispositive on the timeliness issue. *See Goldman v. Sears Roebuck & Co.*, 607 F.2d 1014,

---

**4.** Vermont is a deferral state within the framework of Title VII, 42 U.S.C. § 2000e–5(e), due to its enactment of the Vermont Fair Employment Practices Act, 21 V.S.A. § 495 *et seq.. See* Schlei & Grossman, *supra*, at 941.

**5.** A timetable of events illustrates the untimeliness of plaintiff's administrative charge.

| Date | Event |
|---|---|
| 1978 | Failure to gain promotions to Order and Pricing Clerk I and Personnel Supervisor |
| March 27, 1980 | Final action taken rejecting plaintiff's application for Purchasing Agent position |
| June 17, 1980 | 300-day filing period begins to run |
| January 28, 1981 | Plaintiff leaves Moore |
| February 12, 1981 | Administrative charge filed; 60-day deferral period begins to run |
| April 13, 1981 | Charge filed with EEOC by operation of law (end of 60-day deferral period and end of 300-day period) |
| August 27, 1981 | EEOC issues Notice of Right to Sue |
| October 13, 1981 | Federal court action commenced by the plaintiff's letter to the court |

1017 (1st Cir.1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980).

*Scope of Federal Court Complaint*

■ Paragraph 6 of plaintiff's complaint asserts a broad-based attack on Moore's personnel policies and practices relative to advancement opportunities for women. The matters presented to the EEOC did not include the broad-based allegation of discrimination of women at Moore. Nor did the EEOC receive a charge of "continuing" sex discrimination as to this plaintiff. The events investigated in the administrative tribunal, as evidenced through the determinations issued, were limited to the specific instances of discrimination advanced by Joanne Valente in her administrative charge. Since these allegations exceed the scope of plaintiff's EEOC charge and were not considered in the actual EEOC investigation, these particular charges cannot be considered.

■ The federal courts may exercise jurisdiction over matters "reasonably related" or claims that "could reasonably have been expected to grow out of" claims in the EEOC charge. *Almendral v. New York State Office of Mental Health, et al.*, 743 F.2d 963, at 967 (2d Cir.1984); *Kirkland v. Buffalo Board of Education*, 622 F.2d 1066, 1068 (2d Cir.1980) (per curiam). On the classwide-type challenge, federal courts generally have rejected such allegations when plaintiffs have failed to raise them below and the EEOC did not conduct an expansive investigation. *See, e.g., Hebert v. Monsanto Co.*, 682 F.2d 1111, 1115–1116 (5th Cir.1982); *EEOC v. East Hills Ford Sales, Inc.*, 445 F.Supp. 985 (W.D.Pa.1978); *EEOC v. National Cash Register Co.*, 405 F.Supp. 562 (N.D.Ga.1975).

> Under Title VII, a plaintiff may not raise in Court a *basis* of discrimination which was not included in her administrative complaint.

*Miller v. Smith*, 584 F.Supp. 149, 154 (D.D.C.1984) (Greene, J.) (emphasis in original).

■ Since the continuing violation allegations were not advanced in the plaintiff's administrative charge, they are deemed to be waived in the proceedings before this court. Even if the court were to consider the merits of a continuing violation claim, there is no showing of "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period." This is required for plaintiff to prevail on such a claim. *See Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C. Cir.1982) (Ginsburg, J.).

The U.S. Supreme Court has cautioned that a complainant under Title VII may not circumvent the statute's stringent time limits merely by characterizing a completed act of discrimination as a "continuing violation". *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980); *Jones v. City of Somerville*, 735 F.2d 5, 8 (1st Cir.1984); *Valentino v. United States Postal Service, supra*, 674 F.2d at 65.

*Tolling*

It is now settled that

> filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling. The structure of Title VII, the congressional policy underlying it, and the reasoning of our cases all lead to this conclusion.

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982).

The record at hand is barren of equitable considerations sufficient to enlarge the prescribed time limits. *Compare Shockley v. Vermont State Colleges*, Civil No. 83–289, Memorandum of Decision (D.Vt. August 21, 1984) (Holden, J.) (denying defendant's summary judgment motion in Title VII action due to presence of equitable tolling considerations). There are no factors presented of sufficient substance to revive the facts which led to the denial of the plaintiff's advancement in 1978 and prevented her selection as purchasing agent in

March 1980. These episodes in the plaintiff's employment history at Moore are beyond recapture in this proceeding.

Courts have taken a uniformly narrow view of equitable exceptions to Title VII limitations periods. *Earnhardt v. Commonwealth of Puerto Rico,* 691 F.2d 69, 71 (1st Cir.1982). This is not a case where defendant has actively misled plaintiff respecting the cause of action, or an employment decision. *See Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109 (2d Cir.1978); *Earnhardt v. Commonwealth of Puerto Rico, supra,* 691 F.2d at 71–72. Nor is it a case where a plaintiff has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum. *Smith v. American President Lines, Ltd., supra,* 571 F.2d at 109.

In the absence of recognized equitable considerations, the starting point of the plaintiff's proof cannot reach back to claims that arose before June 17, 1980. *Jones v. City of Somerville, supra,* 735 F.2d at 8. This result follows as a direct consequence of the record presented. On the strength of the undisputed facts which are unattended by equitable tolling considerations, the defendant is entitled to judgment as a matter of law on the federal claim within the intendment of Rule 56(c) of the Federal Rules of Civil Procedure.

*Dismissal of Counts II and III*

▉▉▉ When dominant federal claims are dismissed, there is little, if any, jurisdictional basis to retain pendent state claims in the federal forum. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Since the federal claims have been dismissed prior to trial, the state claims should also be dismissed without reaching their merits. *Id.; see McLearn v. Cowen & Co.,* 660 F.2d 845, 848 (2d Cir.1981).

It should also be noted that the district court in Vermont recently dismissed pendent state law claims from a Title VII lawsuit on the premise that Congress has impliedly negated the exercise of pendent jurisdiction under Title VII. *Mongeon v. Shellcraft Industries, Inc.,* 590 F.Supp. 956 (D.Vt.1984) (Coffrin, C.J.).

The entry of judgment for the defendant is in keeping with recent teachings of the United States Supreme Court. In *Baldwin County Welcome Center v. Brown,* —— U.S. ——, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam), *reh'g denied,* —— U.S. ——, 104 S.Ct. 2691, 81 L.Ed.2d 885 (1984), the Supreme Court upheld the dismissal of a *pro se* Title VII complaint for failure to file the federal court action within ninety days of receipt of the EEOC right-to-sue letter. In its conclusion, the Court made it clear that

[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in *Mohasco Corp. v. Silver,* 447 U.S. 807, 826 [100 S.Ct. 2486, 2497, 65 L.Ed.2d 532] (1980), '[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'

*Id.,* —— U.S. at ——, 104 S.Ct. at 1726.

The clerk is directed to enter an order dismissing plaintiff's complaint.

It is SO ORDERED.