**State of NEW MEXICO,
et al., Plaintiffs,**

v.

**GENERAL ELECTRIC COMPANY,
et al., Defendants.**

**Nos. CIV 99–1118 BSJ/KBM,
CIV 99–1254 BSJ/ACT.**

United States District Court,
D. New Mexico.

March 27, 2003.

Brian K. Branch, Law Offices of Brian K Branch, Albuquerque, NM, Turner W. Branch, Harry E. Stowers, Jr., Brian P. Brack, Steven J. Leibel Branch Law Firm, Albuquerque, NM, Andrew Sher, The Sher Law Firm, Houston, TX, R. Thomas Seymour, C. Robert Burton, Seymour Law Firm, Tulsa, OK, Bruce S. Garber, Garber & Hallmark, Santa Fe, NM, Thomas V. Girardi, David R. Lira, Girardi & Keese, Los Angeles, CA, Walter Lack, Stephen R. Terrell, Engstrom, Lipscomb & Lack, LLP, Los Angeles, CA, Craig Lewis, Michael T. Gallagher, Gallagher, Lewis & Kim, Houston, TX, William G. Rosch, III, Rosch & Ross, Houston, TX, Glenn R.

Smith, NM Atty. General's Office, Santa Fe, NM, for Plaintiffs.

Bradford C. Berge, Holland & Hart, LLP, Santa Fe, NM, J.A. Tony Canales, Canales & Simonson, PC, Corpus Christi, TX, William J. Duffy, Robert W. Lawrence, Davis Graham & Stubbs LLP, Denver, CO, Donald P. Fowler, Spriggs & Hollingsworth, Washington, DC, William V. Killoran, General Electric Co., Environmental Affairs Counsel, Cincinnati, OH, Paul B. Galvani, Ropes & Gray, Boston, MA, Peter A. Modlin, Farella, Braun & Martel, LLP, San Francisco, CA, Tami Lyn Azorsky, Traci M. Vanek, McKenna Long & Aldridge, LLP, Washington, DC, Maria O'Brien, Lynn Slade, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, NM, Gregory D. Huffaker, Jr., Ann Maloney Conway, Michael J. Moffett, Huffaker & Conway PC, Alburquerque, NM, Gerald F. George, Andrew L. Strong, Campbell, George & Strong, LLP, Oakland, CA, Robert E. Meadows, King & Spalding, Houston, TX, Robert E. Meadows, Carol M. Wood, Reginald R. Smith, Charles C. Correll, Jr., King & Spalding, Houston, TX, Richard L. Alvidrez, Mary M. Behm, Keleher & McLeod, Alburquerque, NM, for Defendants.

## ORDER DENYING RENEWED MOTION FOR REMAND

JENKINS, Senior District Judge.

On November 14, 2002, the plaintiffs State of New Mexico and State of New Mexico *ex rel.* Patricia A. Madrid filed a Renewed Motion for Remand and Request for Expedited Hearing (dkt. no. 888) ("Renewed Motion"). Plaintiffs' Renewed Motion sought to revive jurisdictional objections earlier raised by the State concerning the removal of its state law claims from state court to this court pursuant to notices of removal filed by General Electric Company and ACF Industries, Inc. in 1999—remand motions that were withdrawn by the State of New Mexico before being heard by this court in May of 2000.[1] The Renewed Motion was accompanied by a Motion for Leave to Amend Complaint to Dismiss CERCLA Claims Against Defendants and Request for Expedited Hearing (dkt. no. 887), seeking to dismiss all federal claims and federal defendants from this action. Read together, plaintiffs'[2] motions asked this court to dismiss all federal agency defendants from this case, along with plaintiffs' federal claims against the remaining defendants,[3] leaving plaintiffs' state law claims against General Electric, ACF Industries and the Chevron/Texaco Defendants[4] to be remanded for further

---

1. Indeed, the Renewed Motion incorporated by reference all of plaintiffs' original moving papers filed more than two years before. (*See* Renewed Motion at 1 n. 1.)

2. As used in this Order, "plaintiffs" refers in all instances to the State of New Mexico and the State of New Mexico *ex rel.* Patricia A. Madrid, and with reference to the CERCLA claims, "plaintiffs" also includes the State of New Mexico *ex rel.* The New Mexico Office of the Natural Resources Trustee, and the Trustee, Dr. William M. Turner. (*See* State of New Mexico's Complaint in the Consolidated Case, filed July 31, 2001 (dkt. no. 367), at 4–5 ¶¶ 11–12.)

3. The dismissal of the federal defendants and of plaintiffs' federal claims against all remain-

ing defendants was accomplished by a separate stipulation and order drafted and presented to the court at the Pretrial Conference on November 20, 2002, and entered that same day. (*See* Stipulation and Order of Dismissal, filed November 20, 2002 (dkt. no. 909).) Though moot at least to that extent, the plaintiffs' motion to amend the complaint was subsequently heard on January 16, 2003, as to issues other than dismissal of federal claims and federal defendants, and was denied in all such respects. (*See* Minute Entry, dated January 16–17, 2002 (dkt. no. 971).)

4. Defendants Chevron U.S.A., Inc., Chevron Pipe Line Company, Texaco, Inc., and Texaco Refining and Marketing, Inc.

proceedings in state court.

On December 20, 2002, ACF Industries, General Electric and the Chevron/Texaco Defendants filed memoranda in opposition to the Renewed Motion for Remand, and on January 8, 2003, plaintiffs filed a consolidated reply memorandum, accompanied by an affidavit. By an Order entered December 23, 2002, the court set the Renewed Motion for hearing on January 16, 2003, along with other pending motions. (Order Setting Amended Pretrial Schedule, filed December 23, 2002 (dkt. no. 920).)

The plaintiffs' Renewed Motion for Remand was heard on January 16, 2003, and at that time the court, having reviewed the materials submitted by the parties and having heard and considered the arguments of counsel, denied the motion. (*See* Minute Entry, dated January 16–17, 2003 (dkt. no. 971).)

As this court explained at the January 16 hearing, the history of this case proves essential to an understanding of the issues underlying the Renewed Motion for Remand.

## PROCEDURAL HISTORY

This action originated in two separate proceedings commenced by plaintiffs in this court and in state court. On October 1, 1999, plaintiffs filed a complaint in this court alleging claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*, against General Electric, ACF Industries, the Chevron/Texaco Defendants, three federal agencies and other defendants no longer present in this case, arising from groundwater contamination at the South Valley Site—a problem already the subject of ongoing CERCLA remediation activity undertaken by the U.S. Environmental Protection Agency (EPA), the State of New Mexico, and several of the named defendants. (*State of New Mexico, et al. v. General Electric Company, et al.*, Civil No.

CV 99–1118 (D.N.M. filed October 1, 1999).) On the same day, plaintiff State of New Mexico filed a complaint for damages against the same defendants (excluding the federal agencies) in the Second Judicial District Court of Bernalillo County, New Mexico, alleging a series of state law claims, including negligence, nuisance, trespass, "violation of public trust," strict liability for ultrahazardous activity, misrepresentation, and unjust enrichment, arising from the same groundwater contamination problem as was addressed in the plaintiffs' CERCLA complaint. (*State of New Mexico, et al. v. General Electric Company, et al.*, Civil No. CV–99–09917 (2d Dist. Ct., N.M., filed October 1, 1999).) Paragraph 2 of the State of New Mexico's Original Complaint for Damages explained that:

2. This action is brought to redress the harm to the public welfare, health and environment of the State of New Mexico resulting from defendants' acts and omissions. The harm arises from the presence, migration and threat of further migration of hazardous chemical wastes and other substances from the operable units which comprise the South Valley Superfund Site (hereinafter referred to as the "Site") in Bernalillo County, New Mexico.

(Original Complaint for Damages, Civil No. CV–99–09917, at 2 ¶ 2.) Plaintiffs' original complaint filed in this court described itself in identical terms:

2. This action is brought to redress the harm to the public welfare, health and environment of the State of New Mexico resulting from defendants' acts and omissions. The harm arises from the presence, migration and threat of further migration of hazardous chemical wastes and other substances from the operable units which comprise the South Valley Superfund Site (hereinafter re-

ferred to as the "Site") in Bernalillo County, New Mexico.

(State of New Mexico's Original Complaint for Damages, Civil No. CV 99–1118 (dkt. no. 1), at 2 ¶ 2.)

### Notices of Removal

On October 29, 1999, General Electric filed a notice of removal of the New Mexico state court proceeding to this court, commencing *State of New Mexico, et al. v. General Electric Company, et al.*, Civil No. CV 99–1254 (D.N.M. filed October 29, 1999). A few weeks later, ACF Industries filed its own notice of removal of the same state proceeding, commencing *State of New Mexico, et al. v. General Electric Company, et al.*, Civil No. CV 99–1470 (D.N.M., filed December 17, 1999). Both General Electric and ACF Industries relied upon (1) "federal officer" removal pursuant to 28 U.S.C. § 1442(a)(1); (2) "federal enclave" jurisdiction under 28 U.S.C. §§ 1331 and 1441(a); and (3) "complete preemption" of plaintiffs' state law claims, *see, e.g., Schmeling v. NORDAM*, 97 F.3d 1336 (10th Cir.1996).[5] On February 4, 2000, ACF Industries moved to consolidate both removed cases, CV 99–1254 and CV 99–1470, for all purposes (dkt. no. 12 [99–1470]).

### Motions for Remand

On March 15, 2000, plaintiffs filed a motion to remand and a supporting brief (dkt. no. 52) in CV 99–1254, asserting a lack of federal removal jurisdiction, and asking that their state law claims be remanded to state court. Defendants in turn filed a series of motions to dismiss plaintiffs' Original Complaint for Damages and to strike plaintiffs' claims for punitive damages and attorney's fees. Plaintiffs filed a similar remand motion in Civil No. CV 99–1470 (dkt. no. 31; filed April 6, 2000), preceded by a motion to strike ACF Industries' notice of removal (dkt. no. 27;

filed January 18, 2000). The court calendared the motions for hearing on May 4, 2000.

### Plaintiffs' Withdrawal of Their Remand Motions

On the eve of the May 4 hearing, plaintiffs filed a written Notice of Withdrawal (dkt. no. 83; filed May 3, 2000), stating that they were withdrawing several pending motions: (1) the State of New Mexico's motion for remand in Civil No. CV 99–1254; (2) the State of New Mexico's motion for remand in Civil No. CV 99–1470; and (3) the State of New Mexico's motion to strike ACF Industries' notice of removal in Civil No. CV 99–1470, as well as the State of New Mexico's memorandum in opposition to ACF Industries' motion to consolidate Civil Nos. CV 99–1254 and CV 99–1470.

Counsel for plaintiffs called the Notice of Withdrawal to this court's attention at the beginning of the May 4 hearing:

> MR. BRANCH: Your Honor, with your indulgence, I would like to bring to the Court's attention some motions that have been withdrawn of recent origin, like yesterday, that probably have not caught up with the file.
> * * * *
> The plaintiffs are withdrawing the State of New Mexico motion for remand in opposition to ACF Industries, Inc. notice of removal and brief in support thereof. That was in the old 1470, which is 1254 now for your Honor.
>
> Per your Honor's order, we are withdrawing the State of New Mexico's motion to strike and dismiss in the supporting brief, again, that was in 1470, which is now 1254, and the State of New Mexico's motion for remand and supporting brief in 1254, which is still 1254.
>
> THE COURT: Okay.

---

5. On March 6, 2000, ACF Industries filed a motion to consolidate cases (dkt. no. 39).

(Transcript of Hearing, dated May 4, 2000, at 8:4–24.) Plaintiffs' counsel confirmed their withdrawal of their motions for remand later that day:

> THE COURT: As I understand it from counsel, Mr. Branch, you want it to stay here?
>
> MR. BRANCH: That's correct, your Honor.

(*Id.* at 55:4–7.)

### Removal Jurisdiction in CV 99–1254

Notwithstanding the plaintiffs' withdrawal of their remand motions, the court pursued its own inquiry into the bases for removal jurisdiction over plaintiffs' state law claims, engaging in an extended colloquy with counsel concerning the asserted grounds for federal jurisdiction. (*See id.* at 10:21–55:7.) Based on the materials submitted and arguments made by counsel for General Electric and ACF Industries, the court made a provisional finding of subject-matter jurisdiction over the removed claims. (*Id.* at 91:16–95:23.)

### Consolidation of the Proceedings

As the quoted excerpt reflects, the court at the outset of the May 4 hearing had ordered the consolidation of the two removal actions, Civil Nos. CV 99–1254 and CV 99–1470. (*Id.* at 6:21–7:20.) At the conclusion of the May 4 hearing, the court denied without prejudice the defendants' various motions to dismiss, instead affording plaintiffs the opportunity to amend their complaint in Civil No. CV 99–1254 in light of defendants' motions, to allege in detail and with particularity the factual basis for the state law claims and to distinguish the state law claims from the relief sought under CERCLA. (*Id.* at 93:13–95:2.) On its own motion, the court also consolidated Civil Nos. CV 99–1118 and CV 99–1254 for all purposes. (*Id.* at 96:9–25; *see also* Order on Matters Raised at Hearing on May 4, 2000, filed June 14, 2000 (dkt. no. 89 [CV 99–1254] ).) It had become plainly apparent to the court that

the reach of plaintiffs' state law claims in CV 99–1254 necessarily depended upon the breadth of the plaintiffs' CERCLA claims in CV 99–1118 and of the ongoing CERCLA remediation program at the South Valley Site. The two actions, CV 99–1118 and CV 99–1254, are more than "related," more than "actions involving a common question of law or fact"—the scope of one action inescapably defines the scope of the other.

In objecting to a proposed form of order reflecting those rulings, plaintiffs urged adoption of qualified language limiting the effect of the consolidation:

> The Court specifically found that it had provisional jurisdiction over CIV99–1254. Therefore, CIV99–1254 and CIV99–1118 cannot be permanently consolidated or "merged" into one lawsuit until the Court finds it has independent jurisdiction over CIV99–1254, separate and apart from its jurisdiction over CIV99–1118.... Therefore, plaintiffs propose the following ¶ 3:
>
>> On the court's own motion and without objection by the parties, Case No. CIV 99–1254 is provisionally consolidated with Case No. CIV 99–1118. Should the Court find that it lacks subject matter jurisdiction over CV99–1254 at a later date, CIV 99–1254 will be remanded to state court. Therefore, CV99–1254 and CV99–1118 are not "merged" into one lawsuit until the Court has made a final determination as to whether or not the Court has subject matter jurisdiction over CIV 99–1254.

(Plaintiffs' Objections to Defendants' Proposed Order on Matters Raised at Hearing on May 4, 2000, filed June 5, 2000 (dkt. no. 42 [CV 99–1254] ), at 1–2.)

Plaintiffs' objection misapprehended the nature of the court's May 4 rulings, and the court did not adopt the language prof-

fered by plaintiffs. Instead, this court's June 14, 2000 Order declared that "[o]n the Court's own motion and without objection by the parties, Case No. CIV–99–1254 is consolidated into Case No. CIV–99–1118," without any qualification or limitation. (Order on Matters Raised at Hearing on May 4, 2000, filed June 14, 2000 (dkt. no. 89 [CV 99–1254] ), at 2 ¶ 3.) That Order was based upon the court's provisional finding—uncontroverted by any party at that time—that this court had jurisdiction over the removed state claims on one or more of the grounds asserted by General Electric and ACF Industries in their notices of removal.

**Plaintiffs' First Amended Complaint for Damages**

Notwithstanding the court's rejection of their limited view of consolidation of these cases, the plaintiffs proceeded to file their First Amended Complaint for Damages on June 6, 2000 (dkt. no. 89 [99–1254] ) pursuant to this court's Order of the same date granting them leave to do so (dkt. no. 87 [99–1118]/dkt. no. 88 [99–1254] ).[6] Paragraph 10 of the First Amended Complaint for Damages pleaded jurisdiction and venue:

> 10. The wrongful acts, releases and damages complained of took place in the County of Bernalillo, New Mexico, and this Court has jurisdiction over the parties, and venue in this district is proper.

(First Amended Complaint for Damages at 4 ¶ 10.)[7] The body of the First Amended Complaint for Damages pleaded new factual and legal allegations, including a direct cause of action under N.M. Stat. Ann. § 30–8–2 asserted for the first time in this proceeding, (id. at 57–59 ¶¶ 180–87),[8] and more detailed allegations distinguishing between the remedies sought under state law and the relief available under CERCLA:

> ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it....").

**6.** In contrast to cases such as *In re Atlas Van Lines*, 209 F.3d 1064 (8th Cir.2000), amendment of the pleadings did *not* follow on the heels of the dismissal of plaintiffs' state law claims. In fact, this court had *denied* the defendants' motions to dismiss at the May 4, 2000 hearing. Plaintiffs were not faced with the "Hobson's choice" of either amending their complaint to add federal claims or risking the dismissal of their entire case. *See id.* at 1067 ("Karnes faced a Hobson's choice. After initially determining that federal law preempted her state claims, the district court granted Karnes leave to file an amended complaint. At that point, Karnes could either file an amended complaint or risk dismissal of her entire case."). Instead, the effort was to further define and clarify the scope of plaintiffs' state law claims *vis-a-vis* plaintiffs' *existing* CERCLA claims pending before this court.

**7.** This allegation mirrors the jurisdictional allegation in Paragraph 4 of plaintiffs' Original Complaint for Damages filed in state court. Nevertheless, given this court's uncontroverted provisional finding of jurisdiction over the removed case, this form of jurisdictional allegation sufficed under Fed.R.Civ.P. 8(a) ("A pleading which sets forth a claim for relief

**8.** Plaintiffs' direct claim under N.M. Stat. Ann. § 30–8–2, then, may well be a state law claim *"originally brought by the plaintiff in federal court,* invoking federal supplemental jurisdiction under [28] U.S.C. § 1367." (State of New Mexico's Consolidated Reply to Defendants' Opposition to the Renewed Motion for Remand, filed January 8, 2003 (dkt. no. 942), at 26 (emphasis in original) (citing *Anglemyer v. Hamilton County Hospital*, 58 F.3d 533 (10th Cir.1995); *Olcott v. Delaware Flood Co.*, 76 F.3d 1538 (10th Cir.1996); and *Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472 (10th Cir.1990)).) Count II of plaintiffs' Original Complaint for Damages cited to N.M. Stat. Ann. §§ 30–8–1 and 30–8–2 as a source of *definition* in pleading the public nuisance claim, but did not allege a violation of § 30–8–2 as the basis for the claim.

6. To the extent that damages incurred by the STATE OF NEW MEXICO are not provided for or are otherwise not recovered pursuant to CERCLA, such as those damages resulting from releases that have occurred wholly before December 11, 1980, those damages resulting from releases of substances exempted under the CERCLA petroleum exclusion, and those damages incurred in excess of the damage limitation as provided by 42 U.S.C. § 9607(c), this Complaint seeks to recover all other damages.

(*Id.* at 3 ¶ 6.) The First Amended Complaint for Damages also rewrote plaintiffs' public nuisance claim (Count II), broadening its terms, and omitted the claim for "breach of public trust," Count III of the Original Complaint for Damages, as well as plaintiffs' claim for strict liability based upon ultrahazardous activity, Count V of the Original Complaint.

By filing the First Amended Complaint for Damages, plaintiffs elected to invoke the jurisdiction of this court for the first time over a new state statutory claim and a broader nuisance claim, as well as four of their existing state law claims, and to abandon two state law claims, rather than seeking remand of any of these claims to state court. This new pleading superseded the Original Complaint for Damages and became the operative statement of plaintiffs' state law claims before this court. *See, e.g., 188 LLC v. Trinity Industries, Inc.,* 300 F.3d 730, 736 (7th Cir.2002) ("An amended pleading ordinarily supersedes the prior pleading. The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading and becomes functus officio. *Nisbet v. Van Tuyl,* 224 F.2d 66, 71 (7th Cir.1955)."); *Young v. City of Mount Ranier,* 238 F.3d 567, 572 (4th Cir.2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." (internal quotation marks omitted)); *Armstrong v. Davis,* 275 F.3d 849, 878 n. 40 (9th Cir.2001) ("'[A]n amended pleading supersedes the original.' *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir.1989) (citations omitted)"); *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.),* 226 F.3d 160, 162 (2d Cir.2000) (as a general rule, "an amended pleading ordinarily supersedes the original and renders it of no legal effect."); *In re Atlas Van Lines,* 209 F.3d 1064 (8th Cir.2000) (It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." (citing *Washer v. Bullitt County,* 110 U.S. 558, 562, 4 S.Ct. 249, 28 L.Ed. 249 (1884))); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1476 (2d ed. 1990) ("A pleading that has been amended ... supersedes the pleading it modifies.... Once an amended pleading is interposed, the original pleading no longer performs any function in the case...."); 3 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 15.08[7] (2d ed. 1988) ("An amended pleading that is complete in itself and neither refers to nor adopts any portion of the prior pleading supersedes the latter.").

Further amendments followed.

Another series of motions to dismiss was heard on July 27, 2000, this time concerning plaintiffs' CERCLA claims as originally pleaded in Civil No. CV 99–1118. The court denied the motions to dismiss, granting plaintiffs leave to file an amended complaint omitting some language deemed objectionable by the defendants, and leave to file a more definite statement of plaintiffs' CERCLA claims by November 1, 2000, detailing plaintiffs' factual allegations against each of the defendants. (*See* Order Regarding Matters Heard on July 27, 2000, filed October 18, 2000 (dkt. no. 191).)

### Plaintiffs' First Amended Complaint & More Definite Statement (CERCLA)

Plaintiffs filed their First Amended Complaint for Damages on November 1, 2000 (dkt. no. 198), along with a More Definite Statement of their CERCLA claims (dkt. no. 201). Several defendants objected and moved to strike these pleadings, asserting that plaintiffs had done more than omit objectionable language from the amended complaint; they had augmented their CERCLA claims with new allegations concerning various parties and new claims for CERCLA response costs without first obtaining leave of court or a stipulation by all parties.[9]

Defendants by then had filed another series of motions to dismiss the plaintiffs' complaints, to strike various claims or pleadings, or for summary judgment. The court heard many of these motions on December 8, 2000, and granted motions to dismiss Chevron Corp., Giant Industries, and common-law fraud claims against General Electric and ACF Industries,[10] denied other motions, or took them under advisement. (*See* Minute Entry, dated December 8, 2000 (dkt. no. 364); Order, filed January 26, 2001 (dkt. no. 277) (dismissing Giant Industries); Order, filed January 26, 2001 (dkt. no. 279) (dismissing Chevron Corp.); Order, filed January 26, 2001 (dkt. no. 281) (granting in part, denying in part, reserving on ACF Industries motion); Order, filed January 16, 2001 (dkt. no. 272) (granting dismissal of fraud claim against General Electric).)

### "Second" and "Third" Amended Complaints

On February 15, 2001, acting wholly on their own initiative, plaintiffs filed a Second Amended Complaint (dkt. no. 299), incorporating by reference the More Definite Statement and repleading plaintiffs' CERCLA claims. The federal defendants, among others, objected to the filing of the Second Amended Complaint absent stipulation by the parties or leave of court. (*See* Federal Defendants' Motion to Strike Plaintiffs' Second Amended Complaint for Damages and Memorandum in Support Thereof, filed February 26, 2001 (dkt. no. 302).)

Plaintiffs conceded the error,[11] withdrew the Second Amended Complaint, and filed a motion for leave to file a Third Amended Complaint (dkt. no. 305), ostensibly mirroring the text of the Second Amended Complaint.[12] The text of that motion, however, referred to a Third Amended Complaint "which sets out with particularity the State of New Mexico's grounds for its state law claims against the Defendant Giant Industries Arizona, Inc.," rather

---

9. (*See* Motion by Defendant General Electric Co. to Strike Plaintiffs' Proposed Amended Complaint and More Definite Statement, filed (dkt. no. 241); Motion by Defendant ACF Industries, Inc. to Strike the State of New Mexico's First Amended Complaint For Damages and the State of New Mexico's More Definite Statement, filed December 6, 2001 (dkt. no. 253); Motion by the Federal Defendants to Strike Plaintiff State of New Mexico's First Amended Complaint for Damages, filed December 20, 2000 (dkt. no. 261).)

10. This ruling was soon extended to the Texaco defendants by agreement. (*See* Order, filed February 16, 2001 (dkt. no. 301) (granting motion by Texaco defendants to dismiss fraud claims (dkt. no. 284); filed January 31, 2001)).

11. (*See* Response to Federal Defendants' Motion to Strike Second Amended Complaint for Damages, filed March 15, 2001 (dkt. no. 310), at 2.)

12. (*See id.* at 3 n. 1 ("Plaintiffs' Second Amended Complaint and the proposed Third Amended Complaint attached to Plaintiffs' Motion for Leave are identical.").) The proposed pleading attached to the Motion for Leave to File Third Amended Complaint (dkt. no. 305) tracks the text of the Second Amended Complaint.

than repleading the CERCLA claims. In the course of briefing that motion, counsel for plaintiffs furnished a copy of another proposed "Third Amended Complaint" repleading plaintiffs' state law claims and seeking, *inter alia*, to revive their state law claims against Giant Industries. (*See* Exhibit 2 to Plaintiffs' "Reply to Giant Industries Arizona, Inc.'s Response in Opposition to Plaintiff's Motion for Leave to Amend its Complaint in Case No. 99–1254 . . .," filed April 23, 2001 (dkt. no. 324).)

At the July 17, 2001 hearing on pending motions, the court denied plaintiffs' motion for leave to replead the claims against Giant Industries by filing the proposed Third Amended Complaint. Further, it was agreed that the Second Amended Complaint was improperly filed and would be stricken; and defendants' motions to strike the First Amended Complaint and More Definite Statement (*see* note 9, *supra*) were denied.

By the time of the July 17 hearing, it was apparent that the plaintiffs' filing of parallel pleadings setting forth their CERCLA and state law claims had grown cumbersome and confusing for both court and counsel,[13] and indeed, was becoming almost unworkable. In lieu of granting them leave to file the amended pleadings previously submitted, the court granted plaintiffs leave to prepare and file a single amended complaint—a complaint integrating all remaining claims asserted in the consolidated case and including all remaining defendants. (Minute Entry, dated July 17, 2001 (dkt. no. 404), at 2–3.)[14] In light of this integrated approach, plaintiffs' motions for leave to file the First Amended Complaint as against ACF Industries and General Electric (dkt. no. 283), and the federal defendants (dkt. no. 295), were ultimately withdrawn. (Minute Entry, dated July 17, 2001 (dkt. no. 404).)

## Complaint in the Consolidated Case

Plaintiffs filed the State of New Mexico's Complaint in the Consolidated Case on July 31, 2001 (dkt. no. 367) ("Consolidated Complaint"), pleading both CERCLA and state law claims against the defendants in one action, based upon identical factual allegations:

2. This action is brought to redress the harm to the public welfare, health and environment of the State of New Mexico resulting from defendants' acts and omissions. The harm arises from the presence, migration and threat of further migration of hazardous chemical wastes and other substances from the

---

13. Indeed, it appears that plaintiffs' motion for leave to file the "Third Amended Complaint" (dkt. no. 305) referred to *two* different proposed pleadings: (1) the ill-fated Second Amended Complaint alleging plaintiffs' CERCLA claims—the proposed pleading attached as an exhibit to the motion, and (2) the re-pleading of plaintiffs' state law claims to include Giant Industries as a defendant—the amendment discussed in the motion and memorandum in support. (*See, e.g.*, Plaintiffs' Consolidated Reply to Defendants' Response and Objections to Plaintiffs' Motion for Leave to File Plaintiffs' Third Amended Complaint, filed March 29, 2001 (dkt. no. 314), at 4 ("[I]t was brought to the Plaintiff's attention that the proposed Third Amended Complaint, which was attached as an exhibit to the Motion presently before the Court, ac-

tually contained the allegations supporting Plaintiff's CERCLA claims against the Defendants, rather than the Complaint containing the state law claims against the Defendants.))

14. Indeed, the idea of integrating plaintiffs' pleadings in order to fully articulate their claims originated with the plaintiffs, not the court. (*See id.* ("Plaintiffs would agree that if permitted to file an Amended Complaint as it relates to the state law claims against Giant, that the Amended Complaint should contain the specific allegations against Giant, which are contained in Plaintiff's proposed Third Amended Complaint, but in all other respects should mirror Plaintiff's First Amended Complaint setting forth the state law claims against the Defendants.").)

operable units which comprise the South Valley Superfund Site (hereinafter referred to as the "Site") and other Defendant facilities located in proximity to the Site in Bernalillo County, New Mexico. (Consolidated Complaint at 2 ¶ 2.) The Consolidated Complaint alleged jurisdiction over plaintiffs' CERCLA claims under 42 U.S.C. § 9613(b) and 28 U.S.C. § 1331. (*Id.* at 4 ¶ 8.) As to the state law claims, plaintiffs alleged:

> 10. The STATE OF NEW MEXICO originally brought suit for the common law claims in CV–99 09917, filed in the 2nd Judicial District Court, County of Bernalillo, on October 1, 1999. That cause was thereafter removed to this District Court by the Defendants. This Court subsequently determined that it has jurisdiction of the common law claims.

(*Id.* at 4 ¶ 10.) By its own terms, the Consolidated Complaint "shall amend any and all complaints filed previously," (*id.* at 2 ¶ 1); it repleaded plaintiffs' CERCLA claims, expanding the relief sought to include specific response costs (as had been attempted in the Second Amended Complaint[15]), as well as repleading the state law claims to "recover **monetary damages** for injuries incurred by the STATE OF NEW MEXICO" to "the extent that the damages alleged herein are either not available under Section 9607(f) of the CERCLA and/or to the extent that CERCLA does not provide adequate remedies to fully compensate the STATE OF NEW MEXICO for Defendants' pollution and contamination" at the South Valley Site. (*Id.* at 3 ¶¶ 4, 5 (emphasis in original).)

The defendants filed answers and/or dispositive motions in response to the Consolidated Complaint, and the parties proceeded with discovery as to all of plaintiffs' pleaded claims. The Consolidated Complaint continued to serve as the operative pleading setting forth the State of New Mexico's claims in this action, with few changes, until the Pretrial Conference.

**Further Amendments**

Plaintiffs continued to invoke the jurisdiction of the court in advance of the Pretrial Conference, moving on September 19, 2002 for another amendment to the Consolidated Complaint rejoining Chevron U.S.A., Inc. as a defendant to all federal and state claims previously asserted against Chevron U.S.A. and pending at the time that plaintiffs had stipulated to Chevron U.S.A.'s dismissal from the case with prejudice. On June 15, 2001, based on a stipulation by plaintiffs and Chevron's counsel, this court had entered an order dismissing all federal and state claims against Chevron U.S.A. (Stipulation and Order of Dismissal, filed June 15, 2001 (dkt. no. 356).) Plaintiffs later realized that they had agreed to the dismissal by mistake, and by motion filed on February 4, 2002 (dkt. no. 439), sought to vacate the dismissal. This court granted that motion at the May 21, 2002 hearing.[16]

Plaintiffs' September 19, 2002 motion sought to replead plaintiffs' federal and state claims against Chevron U.S.A. as part of the Consolidated Complaint.

---

**15.** The Second Amended Complaint sought CERCLA compensation for "the reasonable costs of assessing injury, destruction, or loss of such natural resources." (Second Amended Complaint, filed February 15, 2001 (dkt. no. 299), at 2 ¶ 3.) The Consolidated Complaint added "the costs of any health assessment or health effects study carried out under CERCLA section 9604(I)" to the remedies already sought by plaintiffs under CERCLA. (Consolidated Complaint at 96 ¶ 295.)

**16.** On June 19, 2002, this Court entered an Order (dkt. no. 575), vacating the prior stipulated dismissal of plaintiffs' claims against Chevron U.S.A.

Plaintiffs argued that "allowing Plaintiffs to amend will avoid unnecessary delay due to a technical procedural objection and allow this case to proceed to trial in a timely manner." (Plaintiffs' Motion for Leave to File Amended Complaint, filed September 19. (2002 dkt. no. 800), at 4.) The motion was heard, considered and granted by this court. (*See* Order, filed September 30, 2002 (dkt. no. 863).)

Plaintiffs also filed motions pursuant to Fed.R.Civ.P. 41(a)(2) to dismiss all claims against the "ATA Defendants"—Phillips Petroleum Company, Phillips Pipe Line Company, Ultramar Diamond Shamrock Corporation, Diamond Shamrock Refining and Marketing Company, West Emerald Pipe Line Corporation, and Texaco Pipeline, Inc.—*with* prejudice. This stipulated dismissal of plaintiffs' state claims upon the merits encompassed "[a]ll claims which are or could have been brought against" the ATA Defendants "in Case No. 99 CV 1254 (or as part· of the consolidated action)...." (Order Dismissing with Prejudice the ATA Defendants, filed October 2, 2002 (dkt. no. 864).) As plaintiffs' motion explained:

> Rule 41(a) allows the Court to dismiss the case at the plaintiff's instance, upon such terms or conditions as the Court deems proper. Fed.R.Civ.P. 41(a)(2). Rule 41(a)(2) does not require that the plaintiff's request for dismissal take any specific form; it requires only that the Court approve such a request for dismissal. *Morris v. City of Hobart,* 39 F.3d 1105, 1109 (10th Cir.1994).

(Unopposed Motion for Dismissal With Prejudice of ATA Defendants, filed September 19, 2002 (dkt. no. 796), at 1.) If at that point the court lacked subject matter jurisdiction of those claims, however, it would not be possible to dismiss them with the finality sought by plaintiffs' motion.

## The Pretrial Conference

Beginning on September 30, 2002, the court proceeded with the Pretrial Conference in this action. Court and counsel met again on October 1, 2, 3 and 4, focusing attention on "the formulation and simplification of the issues, including the elimination of frivolous claims or defenses," Fed. R.Civ.P. 16(c)(1), as well as the resolution of any remaining discovery disputes. (*See* Minute Entry, dated September 30–October 4, 2002 (dkt. no. 900), *passim.*) The parties' Proposed Pretrial Order provided the working text for that effort; any pending dispositive motions were also considered in the context of pretrial, as this court had previously stated they would be. (*Id.*)

As the Pretrial Conference progressed, the court made several rulings on substantive issues, denying summary judgment motions by Chevron Pipeline, Chevron USA, and Texaco entities raising the CERCLA statute of limitations (dkt. nos. 523, 582, 583), and granting a motion by the Chevron/Texaco Defendants for summary judgment on plaintiffs' lost tax revenues claim (dkt. no. 584), granting in part a motion by General Electric attacking plaintiffs' "disamenity" damages theory (dkt. no. 631), as well as a motions by ACF Industries and General Electric for summary judgment on plaintiffs' punitive damages claims (dkt. nos. 597, 631). (*Id.*) The court reserved on other motions, and made a preliminary determination concerning plaintiffs' damages theories:

> THE COURT: ... Anyway, I'll simply indicate that I think the State needs to rethink its theory of damages. And I'm uncomfortable in saying it's something that we're simply going to grant summary judgment on. But my inclination is, at this point, that I never would send it to a jury....
>
> ....

You have the loss of use, and I think that that's there. That's there. But I think you really ought to rethink your damages concepts. I think that would be beneficial.

. . . .

But I need to be up front with you on your computations on damages. I, frankly, would find it difficult to send those computations to a jury.

(Transcript of Hearing, dated October 3, 2002, at 736:22–737:2, 737:10–12, 738:3–5.) By the end of the first week of the Pretrial Conference, then, plaintiffs' expansive damages theories—initially seeking a recovery of over $4 billion—had been significantly reduced by paring out remote and speculative claims for lost tax revenues and diminished property values, the "replacement cost" of substituting a surface reservoir for an entire groundwater aquifer, along with legally deficient claims for punitive damages.

Only after these rulings did plaintiffs file their Renewed Motion for Remand and their motion to amend the Consolidated Complaint to dismiss their CERCLA claims and the federal defendants from this action.

When the Pretrial Conference resumed on November 18, 2002, court and counsel addressed a number of motions dealing with trial, including motions *in limine* seeking to exclude testimony by various expert witnesses. (*See* Minute Entry, dated November 18–20, 2002 (dkt. no. 919), *passim.*) On November 20, based upon a stipulation by counsel for all parties, this court entered an order dismissing plaintiffs' CERCLA claims and the federal defendants from the action, all with prejudice. (Stipulation and Order of Dismissal, filed November 20, 2002 (dkt. no. 909).)

## PLAINTIFFS' RENEWED MOTION FOR REMAND

As recounted above, the court heard and considered plaintiffs' Renewed Motion for Remand on January 16, 2003, and denied the motion.[17] The court has reviewed

---

17. At that time, this court explained:

In the interim, we end up with cases that are consolidated, we end up with an Amended Complaint, we end up with those who have withdrawn their motion asserting, as one must, a jurisdictional statement, invoking the jurisdiction of the Court in reference to all of the claims then pending.

And, indeed, the Court has from time to time had its power invoked to force discovery over a period of time, to extend discovery, to pass on discovery motions. The Court's jurisdiction has been invoked to approve—approve partial monetary settlements.

The Court's jurisdiction has been invoked by stipulation to dismiss with prejudice other items before the Court. Not necessarily for all of the reasons asserted by counsel. It seems to me that the question of power to deal with the questions that remain is inextricably tied in with the history of this case.

One now belatedly seeks to resurrect a withdrawn motion that plausibly raised some factual question that could early on have been determined and resolved. That opportunity was withdrawn. One didn't seek to have those determinations made—those factual-driven determinations made that may have some impact on whether there was an improvident removal of a case that ultimately was consolidated and ultimately redefined by the very people who were content to be here and who withdrew the matter.

At the very least, it seems to me that the remaining claims are so-called pendent claims or tag-along claims at the very least. They arrived here, they've been here, they've been consolidated here, they've been prepared here, and it seems to me it only makes good sense to finish what we've started.

I'm going to deny the motion to remand. In reference to that, the history of this case, I think, is very essential. . . .

(Transcript of Hearing, dated January 16, 2003, at 1379:3–1380:16.)

plaintiffs' Renewed Motion for Remand with some care, before and since the January 16 hearing.

Plaintiffs' arguments appear to run down two tracks: (1) "Defendants have not, and cannot, establish that this Court has ever had subject matter jurisdiction over that cause [CV 99–1254], and it should be remanded." (State of New Mexico's Consolidated Reply to Defendants' Opposition to the Renewed Motion for Remand, filed January 8, 2003 (dkt. no. 942) ("N.M. Reply Mem."), at 3.); and (2) "This Court lacked subject matter jurisdiction the very moment *all* parties stipulated in writing to the dismissal of CERCLA claims and the Federal Defendants on November 20, 2002." (*Id.* at 5 (emphasis in original).[18]) The first track revives the objections to removal jurisdiction articulated in their original motions to remand filed in March and April of 2000, and vigorously disputes the grounds for removal jurisdiction asserted by General Electric and ACF Industries in their notices of removal. The second track acknowledges the court's subject matter jurisdiction over plaintiffs' claims during the pendency of their CERCLA causes of action, but looks to the origin of most of the state law claims in a removed case in arguing that after dismissal of all federal claims and federal defendants, 28 U.S.C. § 1447(c)[19] requires the remand of all of those remaining claims to state court, notwithstanding the existence of supplemental jurisdiction described in 28 U.S.C. § 1367.

## Lack of Removal Jurisdiction Over Plaintiffs' State Law Claims

In their Renewed Motion for Remand, plaintiffs argue at length that General Electric and ACF Industries have failed to meet their burden of establishing (1) that their conduct in releasing chemical contaminants into the soil and groundwater at the South Valley Site was undertaken at the direction of a federal officer; (2) that their South Valley facilities are "federal enclaves" over which the United States has accepted exclusive jurisdiction under 40 U.S.C. § 255; and (3) that in enacting CERCLA, Congress intended to substitute a federal cause of action for state law causes of action addressing pollution of the groundwater resource, resulting in "complete preemption" of the plaintiffs' state law claims. (Renewed Motion at 4–11.) Defendants General Electric and ACF Industries each respond that plaintiffs have not rebutted the defendants' initial showings of "federal officer" and "federal enclave" jurisdiction, and that under Tenth Circuit precedent, "complete preemption" exists where "(1) federal law in some manner preempts the state claims asserted in the complaint, and (2) Congress provided a federal remedy in place of a state cause of action." (General Electric Company's Opposition to Plaintiffs' Motion to Remand Claims to State Court, filed January 9, 2003 (dkt. no. 943) ("G.E. Opp. Mem."), at 8–14;[20] *see also* ACF Industries, Inc.'s Opposition to Plaintiffs' Renewed Motion for Remand, filed December 23, 2002 (dkt. no. 926) ("ACF Opp. Mem."), at 10–17.)

---

18. Plaintiffs insist that "remand is mandatory the instance 'it appears that the district court lacks subject matter jurisdiction.'" (N.M. Reply Mem. at 5.)

19. 28 U.S.C. § 1447(c) reads in part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

20. Besides defending its removal of plaintiffs' state law claims, General Electric submits that plaintiffs have waived their objections to removal, and that under CERCLA, plaintiffs' state law claims may be brought only in federal court, jurisdiction over "controversies" under CERCLA being exclusive pursuant to 42 U.S.C. § 9613(b). (G.E. Opp. Mem. at 2–4, 15–17.)

Plaintiffs reply that "[d]efendants have not, and cannot, establish that this Court has ever had subject matter jurisdiction over that cause, and it should be remanded," (N.M. Reply Mem. at 3), arguing that "removal jurisdiction based upon a federal question is determined from the complaint as it existed at the time of removal, not as subsequently amended," and that plaintiffs' complaint in "CV 99–1254, when removed, consisted entirely of state law claims and there was no basis for federal question jurisdiction over the complaint at that time." (*Id.* at 6.)

■ Despite plaintiffs' recent invitation to turn back the clock, the court sees no reason to revisit the provisional finding of removal jurisdiction made on May 4, 2000, and reflected in this court's June 14 Order (dkt. no. 89). By their own actions, the plaintiffs have moved this action beyond those issues by affirmatively invoking this court's subject matter jurisdiction over their federal and state law claims. Whatever the merits of the parties' competing arguments about removal may have been, at this point, the pertinent question is whether "[t]his Court lacked subject matter jurisdiction the very moment *all* parties stipulated in writing to the dismissal of CERCLA claims and the Federal Defendants on November 20, 2002," and remand of the remaining state claims became mandatory under 28 U.S.C. § 1447(c). (N.M. Reply Mem. at 5.)

**Supplemental Jurisdiction and 28 U.S.C. § 1447(c)**

■ In responding to plaintiffs' Renewed Motion for Remand, ACF Industries argues that this court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, and need not remand them to state court even after dismissal of the CERCLA claims and the federal defendants. (ACF Opp. Mem. at 17–22.) The Chevron/Texaco Defendants similarly assert that "[b]y alleging both federal and state law claims in a consolidated complaint, Plaintiffs invoked this Court's supplemental jurisdiction over the state law claims," as they admitted in the proposed Pretrial Order; they argue that this court can and should exercise its supplemental jurisdiction over the remaining state law claims. (Chevron/Texaco Defendants' Opposition to Plaintiffs' Motion to Remand, filed December 20, 2002 (dkt. no. 918) ("Chevron/Texaco Opp. Mem."), at 3, 4–8.)

Plaintiffs argue that the defendants "have confused pendant [sic]/supplemental jurisdiction" over "state law claims *originally brought by the plaintiff in federal court,* invoking federal supplemental jurisdiction under [28] U.S.C. [§ ] 1367," with "state law claims removed to federal court," (*id.* at 26), as to which "remand is mandatory once the federal claim has been dismissed." (*Id.* at 25.)

Yet plaintiffs themselves have asserted that this court has supplemental jurisdiction over their state law claims on more than one occasion. In the Proposed Pretrial Order, prepared by counsel and submitted to the court on September 23, 2002, plaintiffs described their state law claims in terms of supplemental jurisdiction:

**(2) SUPPLEMENTAL (PENDANT) JURISDICTIONAL STATE LAW CLAIMS:**

The State of New Mexico (the "State") also brings this action pursuant to New Mexico common laws and statutes, including trespass, public nuisance, violation of NMSA 1978 § 30–8–2, negligence, and unjust enrichment/restitution ("the state law claims"). The State seeks judgment in monetary damages for injuries proximately caused by the acts and omissions of the following defendants: (a) General Electric Company ("GE"); (b) ACF Industries, Inc.

("ACF"); (c) Texaco Inc. and Texaco Refining and Marketing, Inc. (collectively, "Texaco"); (d) Chevron USA, Inc., Chevron Pipe Line Company (collectively, "Chevron"); and (e) Texaco Pipeline Inc., Diamond Shamrock Refining and Marketing Company, Ultramar Diamond Shamrock Corporation, West Emerald Pipeline Corporation, Phillips Petroleum Company and Philips Pipe Line Company (collectively, the "ATA Defendants").

By virtue of these supplemental (pendant) jurisdictional state law claims, *the State does not and cannot seek a double recovery for the same natural resource damages.* However, by virtue of the fact that Chevron, Texaco and the ATA Defendants seek to invoke the petroleum exclusion contained in section 101(14) of CERCLA, 42 U.S.C. § 9601(14); if successful, recovery may only be available against these defendants under New Mexico state law. Likewise, to the extent that GE, ACF, Chevron and Texaco seek to avoid CERCLA liability by virtue of any other CERCLA statutory defense and if successful, recovery may also only be available under New Mexico state law. Finally, pursuant to the election of remedies doctrine, after a verdict is reached by the trier of fact, the State may elect to recover either under New Mexico State law claims or CERCLA so long as there is no double recovery for the same natural resource damages.

(Proposed Pretrial Order at 17–18 (emphasis in original).) In the "State of New Mexico's Motion for Leave to Amend Complaint to Dismiss CERCLA Claims against Defendants," filed November 14, 2002 (dkt. no. 887), plaintiffs assert that "[d]ismissal of CERCLA claims and the federal defendants is appropriate when it will return pendent claims to state court where they will be more appropriately adjudicated.... In the instant case, dismissal of the Federal Defendants will permit remand to state

court...." (*Id.* at 2 n. 2.) "Pendent claims," of course, are state law claims within a federal court's supplemental jurisdiction. *See* Charles A. Wright, *Law of Federal Courts* § 19 (5th ed.1994).

Plaintiffs rely on *Fent v. Oklahoma Water Resources Board,* 235 F.3d 553 (10th Cir.2000), as authority for the proposition that once federal claims in a removed case are dismissed, § 1447(c) requires remand of any remaining state law claims, supplemental jurisdiction or not. In *Fent,* however, "the controlling question under § 1447(c) is whether the district court had subject matter jurisdiction over the case when it dismissed plaintiffs' cause of action against the United States as barred by sovereign immunity and the rest of their claims against the state defendants as barred by the Eleventh Amendment." 235 F.3d at 558. The court of appeals recognized that where the United States retains its sovereign immunity, the district court "lacks subject matter jurisdiction to hear the suit.... If the Eleventh Amendment likewise deprived the district court of subject matter jurisdiction over the state defendants, the entire case would have been so barred and § 1447(c) would by its terms require the remand plaintiffs seek." *Id.*

The jurisdictional question in *Fent* thus involved state claims over which federal jurisdiction was barred from the outset by the Eleventh Amendment. "Accordingly, when the district court concluded that the state defendants had raised a valid Eleventh Amendment defense to the only part of the case not barred by federal sovereign immunity, it necessarily recognized its lack of subject matter jurisdiction over the action." *Id.* at 559. Supplemental jurisdiction did not affect this result because, as the court of appeals explained, " '[S]upplemental jurisdiction does not render the Eleventh Amendment inapplicable because the Supreme Court has held that "neither

pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment," ' " *Id.* at 559 n. 5 (quoting *Mascheroni v. Bd. of Regents of the Univ. of Cal.,* 28 F.3d 1554, 1559 (10th Cir.1994)).

Nothing in *Fent* establishes that the dismissal of federal claims in a removed case by itself divests a district court of supplemental jurisdiction over any remaining state claims, at least absent some barrier to the exercise of that jurisdiction, such as the Eleventh Amendment.[21] Nor does *Fent* discuss whether after removal, a plaintiff may affirmatively invoke the original or supplemental jurisdiction of a federal court by amending the complaint.

Defendants cite *Akin v. Ashland Chemical Co.,* 156 F.3d 1030, 1036 (10th Cir. 1998), on that issue:

> After removal of the case to federal court and the motion to remand was denied, plaintiffs voluntarily amended their complaint, asserting a cause of action in federal court against defendants Dow Chemical, Ashland Chemical and McGean–Rohco, Inc. This court holds that plaintiffs cannot voluntarily invoke, and then disavow, federal jurisdiction. In *Bernstein v. Lind–Waldock & Co.,* the Seventh Circuit stated:
>
> > But once [plaintiff] decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint he was bound to remain there. Otherwise he would be in a position where if he won his case on there merits in federal court he could claim to have raised the federal question in his amended complaint volun-

tarily, and if he lost he could claim to have raised it involuntarily and to be entitled to start over in state court. He "cannot be permitted to invoke the jurisdiction of the federal court, and then disclaim it when he loses."

> 738 F.2d 179, 185–86 (7th Cir.1984) (citations omitted); *see also Barbara v. New York Stock Exch., Inc.,* 99 F.3d 49 (2d Cir.1996); *Tolton v. American Biodyne, Inc.,* 48 F.3d 937 (6th Cir.1995).

They suggest that plaintiffs invoked the jurisdiction of this court no later than the July 31, 2001 filing of the Complaint in the Consolidated Case (dkt. no. 367), repleading plaintiffs' CERCLA and state law claims, including the claim under N.M. Stat. Ann. § 30–8–2, based upon a common set of factual allegations.[22] The Consolidated Complaint superseded all of plaintiffs' prior pleadings, invoking this court's jurisdiction over the federal and state law claims alleged therein.

██ Plaintiffs also invoked this court's jurisdiction in seeking to add Chevron U.S.A. back into its pleadings as a defendant, and in requesting dismissal of all federal and state claims against the ATA Pipeline Defendants *with prejudice* (dkt nos. 864, 865, filed October 2, 2002); a court lacking subject matter jurisdiction over plaintiffs' *state law claims* would not have the power to enter an order dismissing those claims *with prejudice,* that is, on the merits. *See, e.g., Gold v. Local 7 United Food and Commercial Workers,* 159 F.3d 1307, 1310–11 & n. 5 (10th Cir. 1998) (district court declining supplemental

---

**21.** *Fent* does *not* say that in "the case of state law claims removed to federal court, remand is mandatory once the federal claim has been dismissed"—the proposition for which *Fent* is cited by plaintiffs. (N.M. Reply Mem. at 25.)

**22.** Arguably, plaintiffs invoked the supplemental jurisdiction of this court when they filed their First Amended Complaint for Dam-

ages on June 6, 2000 (dkt. no. 89 [99–1254]), adding a new statutory claim for damages under N.M. Stat. Ann. § 30–8–2 for pollution of drinking water (Count III) in lieu of the prior claim of "breach of public trust." The Renewed Motion for Remand, if granted, thus presents the curious problem of *remanding* to state court a claim that was never pleaded there.

jurisdiction could not dismiss state law claims on the merits).[23] Beyond that, plaintiffs arguably invoked the jurisdiction of this court in the Proposed Pretrial Order, where they describe their state law claims as "supplemental" or "pendant" (sic) claims. (Proposed Pretrial Order at 17–18.)

Plaintiffs reply that the defendants "focus on actions that Plaintiffs were *ordered* to do *after* removal," (N.M. Reply Mem. at 6), not actions they took of their own accord:

> CV 99–1254 was removed and ordered consolidated with with CV 99–1118. Plaintiffs were ordered to file a consolidated complaint. Plaintiffs were ordered to negotiate and submit a joint pretrial statement with Defendants....

(*Id.*) Yet at each stage of this proceeding, the State remained "the 'master of [its] claims' for purposes of removal jurisdiction," (*id.* at 5), as well as the original and supplemental jurisdiction of this court. In June of 2000, plaintiffs chose to plead new and expanded state law claims before this court, rather than raising any jurisdictional objections they may have had. At each subsequent stage of the pretrial process, plaintiffs elected to pursue both their federal and state law claims before this court. At no time were plaintiffs faced with a "Hobson's choice" of either amending their complaint to plead federal claims or facing the dismissal of their entire case, as was the situation in *Atlas Van Lines*, 209 F.3d at 1067, *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1241 (8th Cir.1995),[24] and other cases in which amendments to pleadings have been deemed "involuntary."

Instead of amending the pleadings as recounted above, plaintiffs could have raised any jurisdictional objections they may have had concerning their original state law claims, and were free to seek remand of those claims to state court on jurisdictional grounds. They chose not to do so. They were free to omit the state law claims from the amended complaints altogether, and pursue only the CERCLA claims in this forum, but chose not to do so.

Plaintiffs now insist that "nowhere within the four corners of the joint pretrial order do plaintiffs admit federal subject matter jurisdiction." (N.M. Reply Mem. at 6.) Yet "supplemental jurisdiction" necessarily represents a form of federal subject matter jurisdiction[25] admitted by

---

**23.** If plaintiffs' current jurisdictional objections are well taken, the finality of this stipulated dismissal under *res judicata* principles seems highly doubtful. *See Gold,* 159 F.3d at 1311 & n. 5. As the Supreme Court observed in *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 76–77, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996), "if, at the end of the day and case, a *jurisdictional* defect remains uncured, the judgment must be vacated." (Emphasis in original.)

**24.** "In *Humphrey,* the plaintiff filed a motion to amend his complaint after the district court determined that his state law claims were preempted by federal law. We held that such a motion was involuntary because the plaintiff faced the Hobson's choice of amending his complaint or risking dismissal." *Atlas Van Lines,* 209 F.3d at 1067 (footnote & citation omitted).

**25.** *Cf. Matosantos Commercial Corp. v. Applebee's Intern., Inc.,* 245 F.3d 1203, 1207 (10th Cir.2001) (subject matter jurisdiction for federal district court to consider state negligence claims was apparently based on 28 U.S.C. § 1367 supplemental jurisdiction); *Fent,* 235 F.3d at 559 & n. 5 ("The Eleventh Amendment prevented the district court from exercising subject-matter jurisdiction over [plaintiff's] claims," including supplemental jurisdiction); *Gold v. Local 7 United Food and Commercial Workers,* 159 F.3d 1307, 1311 n. 5 (10th Cir.1998) ("a refusal to exercise supplemental jurisdiction means the district court is without subject matter jurisdiction").

plaintiffs in the Proposed Pretrial Order, and this court does not "lack subject matter jurisdiction" in cases where supplemental jurisdiction has been invoked.

Without question, this court had original "federal question" jurisdiction of plaintiffs' CERCLA claims from the moment that plaintiffs filed their complaint with this court on October 1, 1999, through the plaintiffs' voluntary dismissal of those claims three years later on November 20, 2002. The parties disagree as to the *consequence* of that dismissal, with plaintiffs arguing that it divested this court of all jurisdiction over their state law claims and defendants arguing that supplemental jurisdiction over those claims remains intact.

**"Lack of Subject Matter Jurisdiction" v. Voluntary Dismissal of Plaintiffs' Federal Claims**

■ Generally, "The federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises just one constitutional case.'" *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 164–65, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). 28 U.S.C. §§ 1367(a)[26] codifies this principle

as "supplemental jurisdiction," and "applies with equal force to cases removed to federal court as to cases initially filed there; ..." *Id.* at 165, 118 S.Ct. 523.

According to the court of appeals, "if a party alleges a substantial and nonfrivolous federal claim, a district court obtains subject matter jurisdiction and may, in its discretion, exercise supplemental jurisdiction over related state law claims. Once subject matter jurisdiction exists, a district court has constitutional authority to hear related state claims even if the federal claim is later dismissed by the district court or by this court on appeal." *United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd.,* 210 F.3d 1207, 1222 (10th Cir. 2000). This principle holds true in cases removed to federal court as well. *See, e.g., Hinson v. Norwest Financial South Carolina, Inc.,* 239 F.3d 611, 616 (4th Cir. 2001) ("Supplemental jurisdiction authorized the district court to adjudicate the State pendent claims ... even after the federal claim dropped out of the case.") Remand of pendent claims within the court's supplemental jurisdiction is a matter entrusted to the court's discretion under § 1367(c).[27] Thus, where state law claims are removed to federal court, the presence of federal claims or federal defendants provides the basis for supplemental jurisdiction over state law claims which were plainly part of the same controversy. And when the federal claims or federal

**26.** Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

**27.** The Supreme Court has held that a district court has the discretion to remand pendent state claims "upon a proper determination

that retaining jurisdiction over the case would be inappropriate." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Discretionary remand is essential for dealing with pendent claims "in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id.* In *Carnegie–Mellon* the district court had remanded after the plaintiffs amended their complaint to drop their only federal claim. *Albertson's Inc. v. Carrigan,* 982 F.2d 1478, 1481 (10th Cir.1993).

defendants are dropped from the case, "the district court still had the *power* under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over the other claims." *Mizuna, Ltd. v. Crossland Fed. Sav. Bank,* 90 F.3d 650, 657 (2d Cir.1996).

On the other hand, a complete lack of original federal jurisdiction precludes the exercise of supplemental jurisdiction over state claims removed from state court. *See, e.g., Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1188 (2d Cir.1996) ("[S]ince a court must have original jurisdiction in order to exercise supplemental jurisdiction, a dismissal [for lack of subject matter jurisdiction] precludes a district court from exercising supplemental jurisdiction over related state claims."). Remand in such cases is required under 28 U.S.C. § 1447(c).

But § 1447(c) does not limit the exercise of supplemental jurisdiction in removed cases, as plaintiffs now suggest. In *Parker v. Della Rocco,* 252 F.3d 663 (2d Cir. 2001), the court explained:

> Appellant argues that ... 28 U.S.C. § 1447(c), limits supplemental jurisdiction in the removal context by providing that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." This argument fails because § 1447(c) merely addresses the *consequences* of a jurisdictional flaw, *i.e.* it mandates a remand rather than a dismissal, *see Int'l Primate Protection League,* 500 U.S. at 87, 111 S.Ct. 1700; it does not affect the standard for determining whether jurisdiction is lacking.

*Id.* at 666.

On the question of remand, the distinction between the operation of § 1447(c) and the application of § 1367 seems quite simple: " 'In a Section 1447(c) remand, federal jurisdiction *never* existed, and in a non-Section 1447(c) remand, federal juris-diction *did exist* at some point in the litigation, but the federal claims were either settled or dismissed.' " *Heaton v. Monogram Credit Card Bank of Georgia,* 231 F.3d 994, 997–98 (5th Cir.2000) (quoting *Bogle v. Phillips Petroleum Co.,* 24 F.3d 758, 762 (5th Cir.1994))(emphasis in original).

**Factors Bearing Upon the Exercise of Supplemental Jurisdiction**

The exercise of supplemental jurisdiction is discretionary. *International College of Surgeons,* 522 U.S. at 172, 118 S.Ct. 523. Federal district courts are statutorily authorized to decline supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (2000). "Depending on a host of factors, then—including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims—district courts may decline to exercise jurisdiction over supplemental state law claims." *International College of Surgeons,* 522 U.S. at 173, 118 S.Ct. 523. Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.' " *Id.* (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); *Gold v. Local 7 United Food and Commercial*

*Workers,* 159 F.3d 1307, 1310 (10th Cir. 1998). *See also Carnegie–Mellon Univ. v. Cohill,* 484 U.S. at 350, 108 S.Ct. 614 (noting that district courts should weigh "values of judicial economy, convenience, fairness, and comity" as they pertain to "every stage of the litigation"); *Bauchman v. West High School,* 132 F.3d 542, 549 (10th Cir.1997).

█ Plaintiffs insist that these factors weigh decisively in favor of declining the exercise of supplemental jurisdiction and remanding their remaining state law claims to New Mexico state court, particularly as to "novel or complex issues of State law." (N.M. Reply Mem. at 27–30.) Defendants argue that to the contrary, these factors favor retaining jurisdiction over plaintiffs' claims in this court, where the litigation has already reached an advanced stage and may soon be brought to trial and final judgment. (G.E. Opp. Mem. at 5–7; ACF Opp. Mem. at 17–22; Chevron/Texaco Opp. Mem. at 5–8.)

Plaintiffs' state law claims raise a novel, if not complex issue of state law concerning the nature of the State's interest in a natural resource that it holds in trust for the use and benefit of others. That question has been addressed at some length in the continuing Pretrial Conference in this case, and has been the subject of a series of motions for summary judgment. This court has ruled on those motions, at least in part, and has made a preliminary determination of the extent of the State's compensable interest in a groundwater resource damaged by chemical contaminants ostensibly released by some or all of the remaining defendants.

This court explored this issue in detail in considering the Renewed Motion for Remand, and more recently at the pretrial conference, when plaintiffs requested that a question be certified to the New Mexico Supreme Court concerning the appropriate measure of damages for injury to the State's interest in the groundwater underlying the South Valley Site. (*See* Minute Entry, dated February 4–6, 2003 (dkt. no. 985).[28]) The court has also examined the "interplay between the various state regulations governing groundwater quality and common law notions of damage," as well as the "appropriate valuation of a stock of polluted *in situ* groundwater." (N.M. Reply Mem. at 29.)

Each of plaintiffs' remaining claims is premised upon a loss of use of groundwater due to chemical contamination at a site already the subject of an ongoing EPA remediation project under CERCLA. Ironically, even though only state law claims remain pending, these claims do not present only questions of state law because of the fact that the remaining claims inescapably must be defined in terms of the CERCLA remedy and the scope and extent of the ongoing CERCLA remediation:

4. . . . [T]he Complaint also seeks to recover damages to the extent that damages suffered by the STATE OF NEW MEXICO are not provided for and/or are otherwise not recoverable pursuant to CERCLA, such as those damages resulting from releases that have occurred wholly before December 11, 1980, those damages resulting from releases of substances exempted under the CERCLA petroleum exclusion, and those damages incurred in excess of the damage limitation as provided by 42 U.S.C. § 9607(c).

5. The state law claims herein do not conflict with the provisions of CERCLA. 42 U.S.C. § 9607(e)(2), 9614(a) and (b), and 9652(d). . . . [N]or does this

---

**28.** The proposed question was "What is the measure of damages for injury to the State of new Mexico's ownership interest in the aqui-

fer formation and ground water resource?" (*Id.* at 6.)

Complaint seek to collaterally attack any ongoing or past regulatory compliance activities. This Complaint seeks to recover **monetary damages** for injuries incurred by the STATE OF NEW MEXICO.

* * * *

344. To the extent that CERCLA, for whatever reason, does not provide adequate remedies to fully compensate the STATE OF NEW MEXICO for Defendants' pollution and contamination as alleged herein, this Complaint seeks to recover compensatory damages for all injuries suffered by the State of New Mexico.

(Consolidated Complaint at 3 ¶¶ 4–5, 108 ¶ 344 (emphasis in original).) As counsel explained during the Pretrial Conference: "The remedy to the State and the trustee under CERCLA and under the common laws is that they are entitled to damages that are residual at the end of the currently operated remediation system." (Transcript of Hearing, dated November 18, 2002, at 907:2–25 (Stephen Terrell (NM)).) Plaintiffs' claims thus seek a *residuum* necessarily defined by reference to federal

law.[29] Moreover, plaintiffs' counsel has defined those damages in terms of *loss of use* of groundwater for drinking water purposes, an injury that overlaps CERCLA concepts of natural resource damage, and one that finds its measure in federal safe drinking water standards as adopted by the State of New Mexico in its own administrative regulations. *See* N.M. Admin. Code 20.7.10.100; 40 C.F.R. § 141.61 (2002).

Thus, plaintiffs' state law claims are inextricably tied to CERCLA, and determining the State's right to relief necessarily depends on resolution of a substantial question of federal law.[30] "Indeed, in a limited respect, Congress has 'federalized' state law as it relates to recovery for injuries caused by the release of hazardous substances: such state environmental claims are 'controversies arising' under CERCLA, as well as state law, because it is the federal statute that defines when they accrue." *Bolin v. Cessna Aircraft Co.*, 759 F.Supp. 692, 716 (D.Kan.1991) (footnote omitted).[31]

While following the dismissal of the CERCLA claims from this case, plaintiffs

29. It is clear from the Pretrial Conference that in addition to damages for contamination predating or excluded from the CERCLA remedies, plaintiffs seek damages for alleged loss of use of groundwater due to contamination by hazardous substance within the scope of the existing CERCLA remediation that plaintiffs believe will remain in place even after that project is completed.

30. For this reason, it may be that plaintiffs' state law claims can be said to "arise under" the laws of the United States, invoking the original subject matter jurisdiction of the federal district court pursuant to 28 U.S.C. §§ 1331 or 1441(b). *See International College of Surgeons*, 522 U.S. at 164, 118 S.Ct. 523. Indeed, as General Electric suggests, these claims may represent a "controvers[y] arising under" CERCLA within the meaning of 42 U.S.C. § 9613(b), over which *exclusive* original federal subject matter jurisdiction would

extend. *See, e.g., Bolin v. Cessna Aircraft Co.*, 759 F.Supp. 692, 714–16 (D.Kan.1991) (upholding pendent party jurisdiction over plaintiffs asserting only state law claims in CERCLA action brought by other plaintiffs).

31. 42 U.S.C. § 9658(a)(1) (2000) reads:

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

may point to that dismissal, and assert that the state law claims "predominate[ ] over the claim or claims over which the district court has original jurisdiction," these factors carry less than their usual weight given the dependency of the state claims upon definition supplied pursuant to CERCLA.

It may also be meaningful that plaintiffs did not seek to raise jurisdictional objections in this case until after this court had granted several motions for summary judgment and had narrowed plaintiffs' damages claims in significant ways—two-and-a-half years after they withdrew their initial motions for remand. As the court of appeals concluded in the *Akin* case, "plaintiffs cannot voluntarily invoke, and then disavow, federal jurisdiction" in order to avoid the effect of adverse rulings. 156 F.3d at 1036. *See, e.g., Mizuna,* 90 F.3d at 657 (upholding exercise of supplemental jurisdiction that served in part to stymie a "fairly bald effort to avoid an unfavorable outcome").

In drawing the fine lines of power, in deciding "who gets to say," counsel as well as the court need to be completely candid. A lack of candor, by itself, does not solve the conceptual problem of power division—*juris/diction,* the power to say what the law is—but assertions made indicate a point of view as of a moment in time, and reflect choices made and roads taken, always at the expense of roads not taken.

Life is *process,* and time does not stand still. Cases change over time.

An absolute bar to removal, or to the exercise of original or supplemental jurisdiction over the State of New Mexico's state law claims, (*e.g.,* the Eleventh Amendment), is not present here. This case does not suffer from an incurable defect.

To the contrary, this court made a provisional finding of jurisdiction over these claims on May 4, 2000, and since that time, the State of New Mexico has added to, expanded, refined and more clearly delineated the claims it pleads, the injuries it alleges and the remedies it seeks. The State of New Mexico had uncontested reasons for being here, originally plausible, which have been fortified and made certain by plaintiffs' deliberate invocation of court power.

**Plaintiffs' November 14, 2002 Motion for Leave to Amend**

Indeed, in plaintiffs' most recent motion for leave to amend the Consolidated Complaint, filed with the Renewed Motion for Remand, the State of New Mexico invoked the aid of this court to augment the factual allegations supporting its remaining claims at the same time that it was asserting that those claims should be remanded back to state court for want of jurisdiction to hear them in this forum. (*See* Motion for Leave to Amend Complaint to Dismiss CERCLA Claims Against Defendants and Request for Expedited Hearing, filed November 14, 2002 (dkt. no. 887).) The defendants objected to the proposed amendment, noting, *inter alia,* that it would expand plaintiffs' state law claims to embrace "gross negligence," and expand its damages claims, even reincorporating lost tax revenue claims rejected during the Pretrial Conference. (*See* General Electric Company's Opposition to State's Motion to Amend Complaint, filed December 20, 2002 (dkt. no. 916), *passim.*) Plaintiffs replied that "[i]n the proposed amended complaint, Plaintiffs have made a good faith effort to conform the factual allegations to proof developed in discovery and that will be presented at trial," that " '[g]ross negligence' has always been a component of Plaintiffs' negligence claim," and that "Plaintiffs have abandoned their claim for unjust enrichment." (Plaintiffs' Reply to Motion for Leave to File Amended Complaint, filed January 7, 2003 (dkt. no. 933),

at 2, 3.) Plaintiffs argued that "[t]here are absolutely no 'new' legal theories in the proposed amended complaint. As such, there is no prejudice to the defendants, and the alleged 'new' allegations will require no additional discovery." (*Id.* at 4.)[32]

The State of New Mexico thus presented its latest motion for leave to amend as purely routine. Dissonance erupted, however, at Paragraphs 6 and 7 of the Proposed "First Amended Consolidated Complaint":

6. This District Court is without jurisdiction over the subject matter of this lawsuit.

7. The STATE OF NEW MEXICO originally brought suit for the common law claims in CV–99 09917, filed in the 2nd Judicial District Court, County of Bernalillo, on October 1, 1999. The STATE OF NEW MEXICO subsequently filed an action for recovery of natural resource damages under the CERCLA in this District Court, CV 99–1118. The State action was thereafter improperly removed to this District Court by the Defendants (renumbered cause 99–1254), By order dated June 14, 2000, CV 99–1118 and CV 99–1254 were consolidated. The STATE OF NEW MEXICO has since dismissed all claims against the Federal Government and dismissed all causes of action predicated under CERCLA, therefore this District Court has no jurisdiction over the remaining parties, and remaining causes of action.

(Proposed First Amended Consolidated Complaint, received November 14, 2002, at 3 ¶¶ 6–7.) Besides making a mockery of the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure con-

cerning jurisdictional allegations, these paragraphs openly disputed the power of this court to grant plaintiffs leave to file the proposed pleading at all—an obvious and unavoidable paradox. Once again, plaintiffs' arguments run on two plainly inconsistent tracks.

The State of New Mexico's explanation? "[T]he plaintiff is the 'master of his claims' for purposes of removal jurisdiction. . . . Therefore, if Plaintiffs believe their well pleaded complaint no longer confers jurisdiction on this Court, they are entitled to state their position in the proposed amended complaint." (Plaintiffs' Reply to Motion for Leave to File Amended Complaint, filed January 7, 2003 (dkt. no. 933), at 5.)

This motion was heard on January 16, 2003, following the denial of the Renewed Motion for Remand, and having heard and considered these dilemmas, the court denied plaintiffs leave to file the Proposed First Amended Consolidated Complaint. (Minute Entry, dated January 16–17, 2003 (dkt. no. 971), at 3.)

**The Balance of the Factors**

As indicated above, given the history of this case, the court is satisfied that the State of New Mexico has affirmatively invoked the jurisdiction of this court over all of its claims. Those claims are necessarily intertwined with significant questions of federal law, whether or not the State of New Mexico has dismissed its CERCLA claims.

Defendants correctly point out that time has not stood still in this case.

The litigation has moved steadily forward through extensive discovery, voluminous document production, numerous depositions, intense expert witness and

---

32. Plaintiffs also asserted that amendment was needed to reinstate plaintiffs' claims against Chevron U.S.A. (*Id.* at 3.) As noted earlier, however, leave had already been granted for an amendment in that regard. (*See* Order, filed September 30, 2002 (dkt. no. 863).)

pretrial preparation—all at the instance of the State of New Mexico, which until very recently, was vigorously pursuing *all* of its claims in *this* forum. The court of appeals has recognized that a federal district court "justifiably may retain jurisdiction of the pendent claims when substantial time and energy have been expended on the case prior to the disposition of the federal claims," *Anglemyer v. Hamilton County Hospital,* 58 F.3d 533, 541 (10th Cir.1995), and has affirmed the exercise of supplemental jurisdiction given "the substantial time and energy expended by the court and the parties during more than three years of extensive discovery and pretrial proceedings." *Sullivan v. Scoular Grain Co. of Utah,* 930 F.2d 798, 803–04 (10th Cir.1991); *see also Jones v. Intermountain Power Project,* 794 F.2d 546, 550 (10th Cir.1986).

Here, then, the "circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims," *International College of Surgeons,* 522 U.S. at 173, 118 S.Ct. 523, do not require remand pursuant to § 1447(c) and do not counsel strongly in favor of declining the exercise of supplemental jurisdiction and remanding the remaining claims to state court pursuant to § 1367(c). Nor do considerations of fairness or comity demand that jurisdiction over this case now be ceded to the state courts. While there is some abstract appeal to the notion of the State of New Mexico's state law claims being tried in a state court, the prevalence of federal law questions in defining the scope and content of those claims weighs in favor of the continued exercise of federal jurisdiction. Some of these questions have been resolved after painstaking examination on motion and at pretrial, and fairness suggests that those resolutions should remain settled, rather than being thrown open

once again following remand to a different court.

Considerations of economy and convenience also weigh in favor of exercising jurisdiction over the remaining claims. It would be burdensome indeed to shift a case with dozens of witnesses—mostly experts—and *8,000* listed exhibits, as well as a record containing nearly 1,000 docketed pleadings, motions, memoranda and other papers and nearly 3,000 pages of hearing transcripts, to a state trial judge having no background or familiarity with the case. The commitment of time, energy and expense on the part of court and counsel necessarily would be considerable, to say the least.

Given the nature and complexity of the factual allegations and the issues presented, both legal and technical, these interests would best be served by resolving them in the forum that has defined and delineated them after an extensive and detailed consideration of the issues during the course of *eleven days* of continuing Pretrial Conference.

We have made some genuine progress. What was once expected to take a *year* of trial time to resolve is now expected to be completed in two phases, each lasting only a few weeks. As indicated at the January 16 conference, this court is persuaded that we should finish what we started in this forum more than three years ago, and proceed with the completion of the Pretrial Conference and trial on the merits of the State of New Mexico's remaining claims.

## INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

On February 24, 2003, counsel for the State of New Mexico filed a Motion for an Order Certifying Interlocutory Appeal Under 28 U.S.C. § 1292(b) (dkt. no. 975), together with a request for expedited briefing and hearing (dkt. no. 977). The court entered an order establishing a

shortened briefing schedule and calendaring the motion for hearing on March 14, 2003. (Scheduling Order, filed February 26, 2003 (dkt. no. 978)). The defendants filed responsive memoranda (dkt. nos. 980, 982, 983), and plaintiffs filed a consolidated reply (dkt. no. 984). The matter was heard on March 14, 2003, in Albuquerque and having heard and considered the arguments of counsel, the court took the matter under advisement.

Plaintiffs submit that the question to be certified for interlocutory appeal is this: *"Does 28 U.S.C. 1447(c) require this case to be remanded to. New Mexico state court?"*

Plaintiffs contend that this court denied the Renewed Motion for Remand because it "determined that § 1447(c) does not require the case to be remanded because (i) supplemental jurisdiction exists; and (ii) federal jurisdiction exists because at the time of removal, the state law claims presented 'plausible' federal questions." (Brief in Support of Motion for an Order Certifying Interlocutory Appeal Under 28 U.S.C. § 1292(b), filed February 24, 2003 (dkt. no. 976) ("N.M. Brief"), at 4.) Plaintiffs "respectfully submit the Court is very much in error on both these aspects of its ruling on January 16, 2003." (*Id.*) "Regardless of whether the Court is right or wrong," counsel continues, "it is the fundamental importance of the issue to (i) principles of federalism, and (ii) the enormous expense to the parties of preparing for and having a trial, which impels the conclusion that the issue presented should be certified to the Tenth Circuit for immediate attention." (*Id.*)

Section 1292(b) allows a district court to certify for immediate appeal "an order not otherwise appealable" if the district court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal

from the order may materially advance the ultimate termination of the litigation."

As this statutory language makes clear, "appellate jurisdiction applies to the *order* certified to the court of appeals." *Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199, 205, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). Thus, although we "may not reach beyond the certified order to address other orders made in the case," we "may address any issue fairly included within the certified order." *Id.; see* 16 Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* §§ 3929, at 388 (2d ed. 1996) ("The court may ... consider any question reasonably bound up with the certified order, whether it is antecedent to, broader or narrower than, or different from the question specified by the district court."); Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b),* 88 Harv. L.Rev. 607, 628–29 (1975) ("scope of review [includes] all issues material to the order in question").

*United Transp. Union Local 1745 v. City of Albuquerque,* 178 F.3d 1109, 1122 (10th Cir.1999) (Briscoe, J., concurring & dissenting). Thus, it is not the *question* that is certified pursuant to § 1292(b), but rather the *order* that embodies the question.

█ Here, it is *this order* denying the Renewed Motion for Remand that would be certified under § 1292(b), with whatever questions are reasonably bound up within it.

Counsel insists that the question framed by the motion presents a "controlling question of law" that may be "completely dispositive," depending on the answer. (N.M. Brief at 4.) As noted above, however, "§ 1447(c) merely addresses the *consequences* of a jurisdictional flaw, *i.e.* it mandates a remand rather than a dismissal,

...; it does not affect the standard for determining whether jurisdiction is lacking." *Parker,* 252 F.3d at 666 (emphasis in original; citation omitted).

Resolution of the jurisdictional question lies beyond the text of § 1447(c).

Counsel for the State of New Mexico argues vociferously and at length that both General Electric and ACF Industries failed to meet their burden to establish removal jurisdiction on at least one of the grounds asserted in their notices, that consolidation of the State's CERCLA action with the removed action by itself does not extend this court's supplemental jurisdiction over plaintiffs' state law claims, and that nothwithstanding the procedural history of this case from May 4, 2000 through November 14, 2002, the State of New Mexico cannot be held to have affirmatively invoked the jurisdiction of this court over the state law claims—at least one of which was pleaded for the first time before this court. Counsel suggests that the State of New Mexico received over $5 million for the settlement of claims against the ATA Defendants, claims dismissed *with prejudice* by this court at the State's instance, in consideration for the entry of an order that counsel now says has no force or effect for want of the subject matter jurisdiction to enter it.

Defendants respond that they in fact carried their burden to establish removal jurisdiction at the outset of this case, that questions of "federal officer" jurisdiction are fact-intensive and not suited to treatment as "controlling questions of law" under § 1292(b), and that since this court's provisional finding of removal jurisdiction on May 4, 2000, plaintiffs have repleaded and expanded their CERCLA and state law claims as one constitutional case grounded in hundreds of paragraphs of identical allegations of fact, thereby invoking federal supplemental jurisdiction over the state law claims—jurisdiction that persists in spite of plaintiffs' voluntary dismissal of all CERCLA claims and the federal defendants on November 20, 2002, with prejudice. They further suggest that the plaintiffs' state law claims necessarily represent "controversies arising under" CERCLA, presenting their own basis for federal question jurisdiction, arguably within the exclusive jurisdiction of this court under CERCLA.

The denial of the State of New Mexico's Renewed Motion for Remand does *not* turn on the merits of the defendants' original allegations of removal jurisdiction, nor the correctness of this court's initial finding that removal jurisdiction existed.

The denial of the Renewed Motion for Remand finds its basis in the subsequent conduct of this litigation by counsel for the State of New Mexico and New Mexico's Attorney General, from and after May 4, 2000, including but not limited to the amendment and expansion of their pleaded state law claims, the prosecution of those claims through discovery and extensive pretrial preparation, the dismissal of several parties *on the merits* at the instance of the plaintiffs, and the affirmative rejoinder of at least one defendant, already once dismissed.

At every stage of this proceeding, the State of New Mexico has invoked the jurisdiction of this court in aid of the pursuit of its claims, retreating only very recently in the face of adverse rulings limiting its theories of compensatory and punitive damages, and made in the context of the continuing Pretrial Conference. The court is satisfied that the State of New Mexico, at minimum, has invoked the supplemental jurisdiction of this court over the state law claims alleged in the Consolidated Complaint—claims that the State itself has characterized as *pendent* claims—and that this court's supplemental jurisdiction was not abruptly divested by the State's volun-

tary dismissal of its CERCLA claims, CERCLA claims that were undoubtedly within the court's original jurisdiction from the beginning.[33]

As a matter within this court's discretion, the Renewed Motion for Remand is denied in furtherance of the continuing exercise of federal supplemental jurisdiction over the State of New Mexico's remaining claims. Though these claims raise questions of state law, they necessarily raise questions of federal law as well, and may appropriately be decided in a federal forum. Factors of economy, convenience, fairness, and comity weigh in favor of retaining supplemental jurisdiction rather than remand, given the circumstances of this particular case, the nature of the claims, and the relationship between the claims, federal law, and ongoing federal remediation activities.

These conclusions turn on "controlling questions of law" with few factual disputes, and counsel for the State of New Mexico would insist that there is substantial ground for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Moreover, counsel expresses particular concern about the prospect of incurring the significant expense of trial at the same time that jurisdictional issues remain in dispute. Particularly troubling is the prospect of obtaining a judgment following trial that proves unenforceable by any party for want of subject matter jurisdiction to enter it.

This court has considered those practical concerns with some care. Though satisfied that this court has jurisdiction over the remaining claims in this case, and prepared to go forward with a trial on the merits, this court is persuaded that the State of New Mexico's jurisdictional objections should be resolved before further significant time and expense is incurred in this litigation. Therefore, this court will grant the State of New Mexico's motion for certification of this Order denying the Renewed Motion for Remand for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

For the reasons explained in some detail above,

**IT IS ORDERED** that the State of New Mexico's Renewed Motion for Remand (dkt. no. 888), is hereby DENIED; and

**IT IS FURTHER ORDERED** that the State of New Mexico's Motion for Certifying Interlocutory Appeal Under 28 U.S.C. § 1292(b) (dkt. no. 975), is hereby GRANTED.

### CERTIFICATION

This Court's determination that the State of New Mexico's Renewed Motion for Remand shall be denied because the court retains supplemental jurisdiction over plaintiffs' remaining state law claims following the voluntary dismissal of plaintiffs' CERCLA claims, all of which were pleaded in the Consolidated Complaint, involves controlling questions of law as to which there is substantial ground for difference of opinion, and an immediate appeal from this Order denying plaintiffs' Renewed Motion for Remand may materially advance the ultimate determination of the litigation. Therefore, the foregoing Order and determination of the Court is

---

**33.** Because the plaintiffs' state law claims remain tightly intertwined with the operative scope of the CERCLA remedy, it may fairly be said that the plaintiffs' right to relief necessarily depends on resolution of a substantial question of federal law, *International College of Surgeons*, 522 U.S. at 164, 118 S.Ct. 523, and it may be that these state law claims raise their own federal questions, invoking this court's original subject matter jurisdiction as well.

hereby certified for interlocutory appeal pursuant to 28 U.S.C. §§ 1292(b) (2000).